BYRON BOLL, Plaintiff-Appellee, v. THE CHICAGO PARK DISTRICT, Defendant-Appellant.

First District (4th Division)   No. 1—89—1954

Opinion filed December 26, 1991.—Rehearing denied May 8, 1992.

954

Nancy Jo Arnold and John C. Doyle, both of Kralovec, Marquard, Doyle & Gibbons, and Michael A. Pollard and Francis D. Morrissey, both of Baker & McKenzie, both of Chicago, for appellant.

Terrence K. Hegarty & Associates, Ltd., and William J. Harte, Ltd., both of Chicago (Terrence K. Hegarty, William J. Harte, James S. Smith, and Courtney C. Nottage, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, it found in favor of plaintiff, Byron Boll, in the amount of $16.5 million and against defendant, the Chicago Park District. The case was a negligence action. Due to plaintiff's 55% comparative negligence, the award was reduced to $7.4 million. A timely post-trial motion of defendant was denied upon the entry of a remittitur and judgment

was entered in favor of plaintiff in the amount of approximately $6.6 million. This appeal followed the denial of defendant's post-trial motion.

On appeal, defendant asks this court to consider three alternatives for relief. First, it requests a judgment in its favor notwithstanding the verdict. In the alternative, it asks this court to reverse the judgment and remand to the trial court with instructions to enter judgment in its favor. If the court chooses neither of these options, defendant asks the court to reverse the judgment and remand to the trial court for a new trial.

We affirm.

The incident at issue occurred in Soldier Field, located at 14th Street and Lake Shore Drive, in Chicago, Illinois. The facility was built in the 1920's for the Pan American Games. Today, the stadium houses the playing field of the Chicago Bears football team. The north end of the stadium houses 11,000 fans who exit out of six wells or vomitories onto the north concourse. The only exits available off the concourse are at the ends of the concourse and two exit ramps in the north parking lot. The distance from one end of the concourse to the other is 300 feet. Witnesses described being in that crowd as "fighting the mass going east or west" and being "unable to get a piece of paper in between two people." Plaintiff testified that he had never been in such a crowd before the time of the incident.

The consistency of plaintiff's version of the events has been called into question. He was either "pushed, shoved and knocked over" the railing by the crowd, or he "fell" as a result of the crowd. Plaintiff testified that his reason for working his way to the outside railing on the concourse was to see what was holding up the crowd. At that moment, the force of the crowd pushed him over the railing. His attempts to climb back inside of the concourse were unsuccessful. As a result of the fall, plaintiff sustained a spinal cord injury and is now a quadriplegic.

Plaintiff alleged negligence and lack of exercise of ordinary care in the design and management of defendant's exit corridor. Plaintiff also alleged negligence in the hiring of an unqualified manager who did not address the extreme crowding or the open-air railing. These allegations were included in the issue instruction to the jury. The second count of the complaint alleged "willful and wanton misconduct." Other counts alleging similar conduct were condensed into the jury issue instructions.

All three of defendant's eyewitnesses testified that plaintiff jumped over the railing of the concourse in an attempt to jump down

onto the ramp but was unsuccessful and fell to the ground. The jury heard plaintiff question the credibility of all of these witnesses with respect to their memories of the event and their exact locations at the time of the event.

Plaintiff's version of the incident is different from that of the three witnesses. Further, no one was able to corroborate his story. Plaintiff's brothers, who accompanied him to the game, were not with him at the time of the accident. However, there were witnesses able to attest to the safety problems caused by crowd congestion on the concourse.

The paramedics who ministered to plaintiff after his fall also testified in contradiction to plaintiff's version. Generally, their testimony was that plaintiff had jumped to the ground. Plaintiff testified that after the fall he was conscious but could not talk. He understood the voice of paramedic Betsy Cook to be giving orders, but he could not discern the words of the lower-pitched male paramedics.

Defendant's motion *in limine*, to bar plaintiff from introducing any evidence and argument as to any prior incidents of other people having jumped over the concourse railing, was denied. Defendant's other motion *in limine*, to bar plaintiff from pursuing alternative factual theories for recovery, was also denied. As a result of these denials, testimony was admitted to the effect that the congestion problem on the north concourse was a contributing factor regardless of exactly how plaintiff sustained his injuries.

Also admissible was testimony concerning whether or not plaintiff was intoxicated at the time of the accident. The paramedics testified that plaintiff admitted that he had been drinking and that they smelled the odor of alcohol around plaintiff. Plaintiff testified that he consumed four beers and four hot dogs at the game. Plaintiff stated that he was neither drunk nor physically impaired from his beer consumption.

Evidence was heard to support plaintiff's claim that defendant's hiring of Frank Hauser as stadium manager was negligent. The jury also heard that there had been negative publicity in the news media regarding Ed Kelly, the former park district superintendent. Kelly had appointed Hauser as stadium manager. Hauser's character and expertise in stadium management were called into question. However, Hauser's job as a stadium manager focused on coordination. There was a specific safety department. Yet, according to plaintiff's expert in park and recreational planning, Hauser did not have the training, background or experience to operate a facility such as Soldier Field.

On the basis of all of the testimony regarding Hauser, defendant moved for a mistrial. The motion was denied.

Plaintiff has contended throughout this case that the crowding on the concourse resulted from the design and management of the concourse. This crowding then resulted in his accident. Plaintiff's claim regarding the structure of the concourse is that Soldier Field was in violation of the Chicago Building Code. Defendant claimed that the named provisions, as well as the entire Chicago Building Code, were not applicable in this case. Further, it contested the competency of the expert testimony to render opinions on statutory interpretation.

Plaintiff's expert, Jacob Pauls, said his areas of expertise were "building life safety" and "human factors." Despite an agreement prohibiting such testimony, Pauls was allowed to testify about crowd conditions at "The Who" rock concert in Toronto, Canada, where a number of people were killed. Defendant's objection to the admission of this testimony and motion for a mistrial were both overruled.

Defendant objected to testimony and argument regarding beer sales as being irrelevant and prejudicial. Generally, plaintiff's experts argued that the beer sales were a significant source of revenue to defendant and gave it a greater obligation to the fans.

The jury verdict was reduced as a result of defendant's post-trial motion. Nevertheless, defendant's request for a judgment notwithstanding the verdict or, alternatively, a new trial, was denied. This appeal followed.

On appeal, defendant contends that (1) plaintiff's case was based on an inherently unbelievable and uncorroborated story, but erroneous rulings by the trial court enabled him to prevail even though the jury did not believe him; and (2) certain errors of the trial court prejudiced defendant and directly contributed to the improper verdict returned by the jury.

In order for this court to consider reversal of the trial court, we must consider the standard of review. The responsibility of a reviewing court is as follows:

> "A reviewing court has a duty to reverse the judgment of the trial court where it determines that the judgment is against the manifest weight of the evidence. [Citation.] However, in making this determination, the appellate court must view the evidence introduced at trial and the inferences drawn therefrom in the aspect most favorable to the prevailing party below." *Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 370.

Defendant argues the necessity of a judgment notwithstanding the verdict due to errors made by the trial court which wrongly influ-

enced the jury's verdict. The standard for granting this motion is clear:

> "A motion for a judgment notwithstanding the verdict should be granted only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Treadwell v. Downey* (1991), 209 Ill. App. 3d 999, 1001, citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 503.

Defendant admits that the jury's verdict was logical based on what it heard, but claims that the jury was able to hear conflicting versions of the event from plaintiff. Further, the presentation was such that by either version, plaintiff could prevail. The law on jury verdicts is clear. "It is well settled that a jury verdict should not be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony." (*Treadwell*, 209 Ill. App. 3d at 1002.) The responsibility of the jury is important in the case at bar as it involves findings of fact.

> "[I]t is preeminently the jury's function to determine the issue of whether defendant[ ] exercised reasonable care under the circumstances. [Citation.] If reasonable minds may differ as to the inferences and conclusions to be drawn from the facts, then judgment *n.o.v.* should not be entered." *Lee v. Grand Trunk Western R.R. Co.* (1986), 143 Ill. App. 3d 500, 509-10.

The standard of review for granting a new trial is very deferential. The verdict must be contrary to the manifest weight of the evidence and appear to be palpably erroneous. (*L.D. Brinkman & Co.-Midwest v. National Sponge Cushion Co.* (1979), 76 Ill. App. 3d 683, 688.) The jury in the case at bar returned a general verdict in favor of plaintiff. It is well established that such a verdict will be sustained "if there are one or more good causes of action or counts to support it." *Moore v. Jewel Tea Co.* (1970), 46 Ill. 2d 288, 294.

■ Given conflicting evidence, disturbing a verdict on appeal requires a clear showing of an opposite conclusion. (*Career Opportunities Inc. v. Grant, Wright & Baker, Inc.* (1980), 91 Ill. App. 3d 984, 987.) In the case at bar, it is not clear that the verdict reached was in error. The jury heard extensive testimony as to how plaintiff descended from the railing. Several witnesses testified to the extreme crowd conditions. The examining physician described plaintiff as having been pushed by the crowd, thereby casting doubt on the theory that plaintiff's ending up over the railing was entirely of his own volition. Therefore, we affirm the ruling of the trial court.

Plaintiff asserted that his accident was caused by the crowd. He contends that in attempting to look above the crowd and see why it was moving so slowly, he was pushed over the open-air railing, lost his grip, and fell to the ground. The trial court heard evidence that this crowd resulted from severe congestion exiting Soldier Field. Further, the court heard evidence that defendant had knowledge of an existing problem with exiting the stadium and failed to take measures to improve the situation.

From plaintiff's witnesses, and his own testimony, the jury was able to conclude that the bumping and pushing of the crowd caused plaintiff to go over the railing. Plaintiff was consistent in his assessment of the cause of the accident and did not amend his complaint at any time. The case at bar is distinguishable from *O'Neill v. Chicago Transit Authority* (1972), 5 Ill. App. 3d 69, where plaintiff amended his complaint at the close of the evidence and included defendant's version of the events. *O'Neill*, 5 Ill. App. 3d at 72.

■■ ■ Next, defendant argues that its duties to plaintiff as an invitee are limited. It describes the dangers faced by plaintiff as obvious. In Illinois, this categorization does not absolve defendant from all responsibility. In *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, the supreme court stated the following:

"This court has not recently had occasion to address the validity of the 'known' or 'obvious' risk principle. We do so now. We conclude that to the extent that the rule may have held that the duty of reasonable care owed by an owner or occupier to those lawfully on his premises does not *under any circumstances* extend to conditions which are known or obvious to such entrants, that rule is not the law in this State." (Emphasis in original.) *Ward*, 136 Ill. 2d at 145.

With respect to the issue of duty, the *Ward* court stated the following:

"The 'reasonable foreseeability' of injury is one important concern [citation], but this court has recognized that foreseeability alone provides an inadequate foundation upon which to base the existence of a legal duty [citations]. Other considerations include the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant." *Ward*, 136 Ill. 2d at 140-41.

Defendant cites this court's rulings in *Nally v. City of Chicago* (1989), 190 Ill. App. 3d 218, and *Coates v. W.W. Babcock Co.* (1990), 203 Ill. App. 3d 165, to counter plaintiff's interpretation of *Ward*. In *Nally*, the plaintiffs cited to *Steinhauer v. Arnie Bauer Cadillac Co.*

(1988), 172 Ill. App. 3d 314. *Steinhauer* stands for the proposition that "the degree of care exercised by the plaintiff and the obviousness of the danger are ordinarily questions of fact." (*Nally*, 190 Ill. App. 3d at 221.) We found that the facts of *Nally* were distinguishable from those in *Steinhauer*.

The case at bar is similar to *Steinhauer*. That case involved a plaintiff who was injured by a ledge protruding from the wall near a chair where plaintiff was directed to sit by defendant. In the case at bar, plaintiff was injured as a result of the crowding due to defendant's design and management of the stadium. Further, plaintiff was a business invitee. The degree of care exercised by plaintiff on the concourse remains a question of fact. It was a common occurrence for fans to climb over the railings in trying to escape the crowds. Further, defendant was aware of this practice and did nothing to stop it.

■ With respect to the second argument in *Nally v. City of Chicago* (1989), 190 Ill. App. 3d 218, the case at bar would fall into the categories listed in the comments to section 343A of the Restatement (Second) of Torts. The relevant portion of the Restatement provides as follows:

> " '(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.' " (*Nally*, 190 Ill. App. 3d at 221-22, quoting Restatement (Second) of Torts §343A(1), at 218 (1965).)

The comments to the Restatement give the following examples:

> " '(1) where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it; or (2) where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.' " *Nally*, 190 Ill. App. 3d at 222, quoting Restatement (Second) of Torts §343A, comment *f*, at 220 (1965).

First, unlike in *Nally*, plaintiff in the case at bar had the major distraction of crowding such that his movements were literally controlled by the force of the crowd. As noted by the expert on crowd safety, this type of frustration would cause an invitee's attention to be distracted. Second, defendant was aware that at every game some fans proceeded to encounter the open-air railings to escape the crowds, despite the risk.

Defendant also cites *Coates v. W.W. Babcock Co.* (1990), 203 Ill. App. 3d 165, to support its contention that the *Ward* exception for nonliability for open and obvious dangers is not applicable in the case at bar. In *Coates*, the plaintiff's amended complaint gave no indication of the applicability of this exception. (*Coates*, 203 Ill. App. 3d at 168-69.) Yet, in the case at bar, plaintiff presented evidence that the park district should have been aware that exit conditions along the concourse were a source of distraction from the dangers of the open-air railings.

■ In *Ward*, the plaintiff knew that the concrete post existed but it was foreseeable that he would be injured by it because his vision was blocked while exiting the store with an unusually large purchase. In the case at bar, there were a large number of people exiting, compounded by the problem that two exits were deemed inaccessible. At the end of the game, plaintiff was forced to contend with the magnitude of the crowd and his frustration at being unable to depart from the stadium in a more expedient fashion. Defendant knew that the inability to exit had caused invitees to climb over the railings. There was testimony that this occurred at the rate of two people per game for three to four years before plaintiff's injury. Clearly, the cost in preventing this dangerous practice was small in comparison to the benefit received as a result of imposing corrective measures. Defendant could have reinforced the railing or opened more exit routes. Yet, defendant did nothing.

Therefore, we hold that the trial court did not abuse its discretion in finding that defendant owed its invitees a duty of reasonable care with respect to an unreasonable danger posed by the conditions, even if they could be considered open and obvious.

■ Defendant argues that plaintiff's contributory negligence showed that his actions were voluntary and, therefore, merited the entry of a judgment notwithstanding the verdict. It argues that the jury instructions permitted a recovery for plaintiff whether he had jumped voluntarily or had been pushed over the railing.

In Illinois, the adequacy of jury instructions is to be determined as follows: "whether, taken as a whole and in series, they fairly, fully, and comprehensively apprised the jury as to the applicable legal principles [citation], and a jury instruction should not assume as true any version of disputed facts which the jury should be expected to resolve." (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 554.) The instructions given clearly defined the legal principles of negligence, contributory negligence, plaintiff's duty of care for his own safety, and proximate cause. In the case at bar, the jury returned a general

verdict in favor of plaintiff and defendant submitted no special interrogatories on its theory of sole proximate cause.

■ The jury was able to hear evidence from both parties to the case. The evidence developed opposing theories with respect to the cause of the accident and who was to blame. The jury was instructed on the legal principles at issue and was able to consider those principles in light of the evidence presented. "It is the law that the jury's intention may be construed, not only from the actual verdict, but from consideration of the whole record that was before the jury, and the court will enter proper judgments thereon." (*Kimes v. Trapp* (1964), 52 Ill. App. 2d 442, 445.) The jury's intention was to hold defendant responsible for breach of duty of reasonable care despite the degree of fault by plaintiff. Its findings were clear, unambiguous, and reasonable. The issue of whether plaintiff ending up over the railing was accidental or intentional was a factual dispute to be determined by the jury. The role of the jury is well established:

> "It is the jury's function to assess the credibility of the witnesses and the weight to be accorded their testimony, and to select from among conflicting inferences and conclusions that which is most reasonable. [Citation.] Merely because the jury could have drawn different inferences or conclusions is not a basis for setting aside a verdict." *Eckdahl v. Lease-A-Plane International Licensing Corp.* (1979), 69 Ill. App. 3d 864, 870.

■ Several issues were presented to the jury. The jury responded with a general verdict in favor of plaintiff but also with a finding that plaintiff was 55% comparatively negligent. The return of a general verdict "creates a presumption that all material issues of fact upon which proof was offered were found in favor of the prevailing party." *McMahon v. Richard Gorazd, Inc.* (1985), 135 Ill. App. 3d 211, 217.

■ In examining the evidence in a light most favorable to the nonmoving party, there is sufficient evidence to support the jury's verdict in favor of plaintiff. The evidence presented could not be interpreted as unequivocally absolving defendant of all guilt regarding plaintiff's fall. A reviewing court cannot substitute its judgment for that of the jury in deciding factual disputes pertaining to the details of plaintiff's fall unless the jury's factual findings are "unreasonable, arbitrary, and not based on the evidence." (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 553.) Further, "[a] party has the right to have the jury instructed on his theory of the case and the question as to what issues have been raised by the evidence is within the discretion of the trial court." *Burge v. Morton* (1981), 99 Ill. App. 3d 266, 269.

The *Burge* court explained that the reviewing court's concern should be whether the result reached in the trial court was reasonable based on the facts in evidence and not whether other conclusions might have been reached. (*Burge*, 99 Ill. App. 3d at 270.) Thus, we find that the jury's verdict was not against the manifest weight of the evidence and, therefore, we affirm the ruling of the trial court.

■■■ The second issue is whether errors of the trial court prejudiced defendant and directly contributed to the alleged improper verdict returned by the jury. The testimony concerning the negligent hiring, beer sales, and local politics was prejudicial. Plaintiff also contends that testimony of "The Who" rock concert in Toronto, Canada, by plaintiff's expert, Jacob Pauls, was prejudicial. However, the admission of such testimony is not a basis for a reviewing court to grant a reversal. It is not the function of the appellate court to second-guess the trial court. The decision whether or not to admit evidence is at the discretion of the trial court. *Behrstock v. Ace Hose & Rubber Co.* (1986), 147 Ill. App. 3d 76, 84.

■■■ Defendant contends that it was prejudicial error to allow plaintiff to present opinion testimony by nonlawyers that defendant violated the Chicago Building Code. Specifically, it contends that the code does not apply to Soldier Field because it is an independent municipality. However, part of the purpose of the Chicago Building Code is public safety. Cases have held that the building code ordinance will be enforced in the interest of public health and safety, as long as there is no interference with the purpose of the park district. (*Village of Swansea v. County of St. Clair* (1977), 45 Ill. App. 3d 184; see also *Wilmette Park District v. Village of Wilmette* (1986), 112 Ill. 2d 6.) Further, the record states that Soldier Field used the Chicago Building Code as its only safety standard during the renovation of the stadium. The act of purchasing a ticket to enter the stadium causes the park district to be engaged in a nongovernmental function. This activity falls outside of the function of the park district as a municipal entity. Thus, defendant would "be held to the same standard of care as that imposed on a private party." *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405, 408.

Defendant argues that the applicable statutes should be construed narrowly, applicable only to emergency situations. However, the rule is as follows:

> "[I]n personal injury cases where liability is grounded in a statutory or ordinance violation, questions of whether a plaintiff comes within the class of persons intended to be protected by the statute or ordinance and whether the injury is of the kind

generally intended to be prevented have been dealt with in terms of proximate cause and, as such, are subject to the determinations of the triers of fact." (*Shehy v. Bober* (1979), 78 Ill. App. 3d 1061, 1067.)

With respect to the jury instructions concerning the Chicago Building Code, we give great deference to the trial court. *Maynard v. Irving Davis Co.* (1970), 122 Ill. App. 2d 28, 34.

Defendant also claims plaintiff's expert witnesses should not have been permitted to testify concerning violations of the safety provisions of the Chicago Building Code. In personal injury actions, the allowance of expert testimony regarding structures and building codes is a matter left to the discretion of the trial court. (*Mattice v. Goodman* (1988), 173 Ill. App. 3d 236, 241.) In the case at bar, both parties were able to present extensive expert testimony on this and other issues.

For the foregoing reasons, we affirm the ruling of the trial court and deny defendant's request for judgment notwithstanding the verdict or for a new trial.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.