NO. 5-96-0396

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

PEGGY S. GRANT,                      )  Appeal from the 

                                     )  Circuit Court of

     Plaintiff-Appellant,            )  Madison County.  

                                     )

v.                                   )  No. 91-L-950

                                     )     

DENNIS J. PETROFF, M.D.,             )  Honorable

                                     )  P. J. O'Neill, 

     Defendant-Appellee.             )  Judge, presiding.  

_________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:  

Peggy Grant's medical malpractice action against Dr. Dennis Petroff claimed that he performed a tubal ligation without her consent.  Grant's second amended complaint alleged medical malpractice, intentional infliction of emotional distress, and  battery.  Plaintiff's motion for leave to file a third amended complaint, which sought to add two additional counts seeking punitive damages for intentional infliction of emotional distress and battery, was denied by the trial court.  We reverse the trial court's decision denying plaintiff leave to file her third amended complaint, and we remand for a new trial.

Nonpublishable material under Supreme Court Rule 23 omitted.

Dr. Robert Hardin, an anesthesiologist, testified for Dr. Petroff.  The issue on appeal is whether Dr. Hardin testified beyond the scope of his expertise and improperly gave an opinion as to whether Grant in fact consented to the sterilization.  Because the question of what Dr. Hardin testified to is crucial, a review of the record is necessary.  The relevant testimony on direct is as follows:

"Q. [by Mr. Freeark, defendant's attorney]  And my basic question, do you--can you demonstrate from your knowledge and review of these records whether or not Peggy Grant had--there was an informed consent by Peggy Grant for the procedures[,] including a tubal ligation?

A. [Dr. Hardin]  In my opinion she was well informed.

* * *

Q.  Now, the position of the parties in court is that Peggy Grant has said she didn't want the tubal on that particular day, and Dr. Petroff says that she did want the tubal because she told him.  Now, that puts you in the posture where one person says one thing and the other person says another thing.  How do you make a decision as to whether there was information--or informed, totally informed consent?

A.  Well, at that point, you have to--I would have to examine the, the pertinent evidence that's available.

MR. LEVY [plaintiff's attorney]:  Your Honor, again I am going to object.  This is nothing more than him taking the place of the jury, saying I look at it, and me as the jury, I think that Peggy is lying and the Doctor is telling the truth.

MR. FREEARK:  That's not--nobody has said anything about that.  What he said is there's a difference of opinion.

THE COURT:  Well, the Court rules as follows, ladies and gentlemen of the jury.

The ultimate question of whether or not the plaintiff here, Peggy Grant, consented to the tubal ligation procedure is for you, ladies and gentlemen, to decide.

MR. FREEARK:  Right.

THE COURT:  This witness may offer his testimony on the question of whether, if the matter contained in the record which supports the plaintiff's position that oral consent was true, that is adequate consent[;] he may offer that.  But the ultimate question of whether in fact she did so and whether those records are correct is for you to decide.

* * *

THE COURT:  *** I again reiterate [
sic
] that this Doctor's opinion is to be received by you, ladies and gentlemen of the jury, only on the point that if you, ladies and gentlemen of the jury, as finders of fact, find that the plaintiff did tell Dr. Petroff and Nurse Mueller that she wanted the tubal ligation, then if that be your finding, in his opinion, that is adequate consent.  But you have to make the factual determination of whether she actually did so.

* * *

MR. FREEARK:  Okay.  In your judgment, in this case, based on your training and experience and background, the documents which you have reviewed in this case, including the depositions, was there a valid, informed consent in this case--

A.  Yes, there was."

During cross-examination by plaintiff's counsel, the following took place:

"Q. [by Mr. Levy]  If I understand it, Doctor, you have testified that based upon your training, expertise and background, and based upon the medical records and the depositions, you think that Peggy Grant gave her--gave an informed consent?

A.  Yes.

* * *

Q.  Okay.  Well, Doctor, the jury is here to decide whether or not Peggy gave that consent, and it's her testimony against the defendant's.  I want to know why you are more qualified than the jury to make that decision.

Let me ask you--you said based on your training and your expertise.  What training do you have to determine whether or not Peggy is telling the truth or the Doctor is telling the truth?

MR. FREEARK:  I am going to object to that, your Honor.  *** The Doctor never said that, never suggested it.  ***

MR. LEVY:  Your Honor, I get to go into the basis of his opinions.  If he has got training that gives him--that makes him capable of judging who is telling the truth, I would like to know what it is.

THE COURT:  Mr. Levy, I am afraid you missed the point of my earlier rulings and admonitions to the jury.  This witness has not testified nor did I permit him to testify about who was telling the truth.  He expressed an opinion which held that, if the Doctor was told by the plaintiff and if Nurse Mueller was so told and the other records in his view do corroborate in his view that she was given [
sic
], then there was consent.

Now, on your cross[-]examination, you may withdraw those submissions.  But he at no time was permitted to substitute his view for that of the jury about who was telling the truth as to whether or not she did or did not actually inform the Doctor or Nurse Mueller that consent was given.

* * *

MR. LEVY:  Your Honor, I just asked him whether or not he gave an opinion whether or not Peggy gave consent and he said yes, she did.  She gave it prior to surgery.  I want to know--I mean, that's what the jury is supposed to decide.  I would like to go into the basis.

THE COURT:  But that's not the bottom line--that's not the point or the question which drew this objection.  The objection was drawn when you asked the question on what training did he rely to substitute his opinion for that of the jury.  And that's when Mr. Freeark objected and I have sustained that objection.

Later, off the record, the court admonished plaintiff's counsel as follows:

"[THE COURT:]  I tried to make clear in my cautionary instruction from the bench to the jury during Mr. Freeark's direct examination that the Doctor would be permitted to offer testimony by way of opinion which was limited to one narrow point insofar as the consent was concerned, and that was that if the jury as finder of fact found that plaintiff had given oral pre-op consent to Dr. Petroff and to Nurse Mueller, then that would have met the standard of care for obtaining oral consent.  And I tried to make it clear that he would not be expressing an opinion that she did so consent, that that was for the ultimate--that is an ultimate question for the jury to decide.  

Now, I repeated that two or three times and I repeated it at least once so far in your cross[-examination], Mr. Levy, but it appears to me that notwithstanding those admonitions, you are attempting to cross[-]examine him as though he did give the opinion which I said he couldn't, and which he did not.  

* * *

THE COURT:  I don't want to get into personal exchanges between counsel.  This witness'[s] testimony gets right to what I believe is the core issue for the jury to decide, and I will repeat it in a written instruction at the end of the trial if necessary and again while this Doctor is on the stand again, but his opinions don't go to the ultimate question of whether she did so.  They do not go to the ultimate opinion of whether she actually gave consent.  

His opinion goes to the issue of whether, if it is assumed that she gave oral consent to Petroff and Mueller pre-operatively, then that would have met the standard of care.  That's as far as it goes."  

The parties returned to the courtroom, and attorney Levy continued with cross-examination.

"Q. [By Mr. Levy]  Doctor, it is now my understanding that what you testified to is that--or let me ask it this way.  Isn't it true that the only thing you were testifying to is that if Peggy gave her oral consent, you think that was adequate?

A.  Yes, I think that's adequate.

Q.  Okay.  And you were not testifying that you think she gave the oral consent?  You weren't making--you weren't asked to make a decision on that point?

A.  I would have to say based on thirty years of experience with over two hundred and forty thousand patients, that this would not have been done if she had not given her consent orally."  

In an attempt to clarify what Dr. Hardin was being asked, the court stated:

"THE COURT:  If you will permit me--I am not going to ask the Doctor a question but I want to explain here what his role is.  

Doctor, this jury has heard evidence from the plaintiff that she did not give oral consent to Dr. Petroff before surgery, and that she did not give it to Mark Mueller before surgery.   

Dr. Petroff, it is known, maintains that she did so, and Nurse Mueller has testified that she did so.  

The jury is going to have to decide whether she in fact did.  

You have opined in questions asked by Mr. Freeark that, if she did, that met the standard of care.  

What Mr. Levy is asking you is that, if she did not, then what is the result with regard to the standard of care.  ***

MR LEVY:  Q.  If she didn't tell the Doctor orally, if we assumed the flip-side-- *** and she didn't orally tell the Doctor that she wanted to be sterilized, then did the Doctor break his standard of care in your opinion?

A.  If he had no consent to do that, yes.

* * *

Q. [by Mr. Levy]  Okay.  And ultimately, on the issue of whether she did or didn't, you don't know, do you, Doctor?

A.  You mean I don't have an opinion or I don't know or--I don't quite understand that, either.

Q.  Whether she actually did or didn't isn't a matter of your medical expertise, is it?

A.  Only insomuch as that I have been involved in the care of patients for so long, and for so many operative procedures, and having reviewed all of the testimony here, my opinion is that she did.

Q.  But your opinion is no different than the jury's, is it?

A.  Not unless they have no value in the experience that I have had."  

During recross-examination, the following occurred:  

Q. [by Mr. Levy]  Do you disbelieve her deposition?

A.  I believe that she gave consent.  If that means I disbelieve her deposition, I guess I disbelieve her deposition.

Q.  So ultimately, what you are saying is you believe one side and not the other?

A.  Well--

MR. FREEARK:  Object to that your, Honor.  ***

THE COURT:  The Court sustains the objection for the reasons previously stated of record with counsel."  

On re-recross-examination, the following occurred:  

"[MR. LEVY:]  ***  Do you believe that as an expert witness, you have read evidence and made a decision which side is telling the truth and which side isn't?

A.  I think I have read the evidence and formulated an opinion about that, yes.

Q.  Formulated an opinion as to which side is telling the truth and which side isn't?

A.  I think I have formed an opinion about the issue, and that is, was there consent given.  And my opinion was yes."  

At the conclusion of Dr. Hardin's testimony, the court stated:

"THE COURT:  The jury is instructed that to the extent this Doctor is purporting to testify and offer the opinion for you to consider that the plaintiff gave a consent, then you are to disregard that opinion.

You may consider this Doctor's opinion and his testimony only on the issue of whether or not if you find from the evidence offered by the other witnesses that she did in fact give oral consent, that then those oral consents met the standard of care by which Dr. Petroff was to be guided."  

The jury returned a verdict in favor of Dr. Petroff.

On appeal, Grant argues first that she was denied a fair trial because Dr. Hardin testified beyond his area of expertise and invaded the province of the jury.  Specifically, Grant maintains that Dr. Hardin testified that Grant in fact gave preoperative oral consent, not merely that had such consent been given, it would have met the requisite standard of care.  Grant further contends that her continued objections to this testimony were overruled because the trial court misunderstood the nature of such testimony.

Expert testimony is admissible if the proffered expert is qualified as an expert by knowledge, skill, experience, training, or education and the testimony will assist the trier of fact in understanding the evidence.  
Dotto v. Okan
, 269 Ill. App. 3d 808, 646 N.E.2d 1277 (1995).  The decision whether to admit expert testimony rests with the sound discretion of the trial court.  
Decker v. Domino's Pizza, Inc.
, 268 Ill. App. 3d 521, 644 N.E.2d 515 (1994).

Although Dr. Hardin was clearly qualified to express an opinion on whether oral consent, if given, was sufficient to meet the applicable standard of care, he possessed no special knowledge, skill, experience, training, or education which would have qualified him to express an opinion on Grant's veracity.  Questions of credibility are to be resolved by the trier of fact.  
People v. Kokoraleis
, 132 Ill. 2d 235, 264, 547 N.E.2d 202, 216 (1989).  Determinations of credibility are the province of the trier of fact.  
In re Marriage of Marshall
, 278 Ill. App. 3d 1071, 1078-79, 663 N.E.2d 1113, 1119 (1996).  

Reviewing Dr. Hardin's testimony, it is evident that his testimony crossed the boundary of admissible expert testimony.  On direct, Hardin was not simply asked to base his opinion on the assumption that Grant had given preoperative oral consent.  Defense counsel specifically elicited responses regarding Grant's veracity:

"Q.  *** [C]an you demonstrate from your knowledge and review of these records whether or not Peggy Grant had--there was an informed consent by Peggy Grant ***? 

A.  In my opinion she was well informed. 

* * *

Q.  *** How do you make a decision as to whether there was information--or informed, totally informed consent?

A.  *** I would have to examine the, the pertinent evidence that's available."  

Dr. Hardin testified that if Peggy Grant did not tell Dr. Petroff prior to surgery that she wanted to be sterilized, then Dr. Petroff violated the standard of care.  Thus, there is no dispute, in this case, that if Peggy Grant did not preoperatively orally consent, the standard of care was violated.  No one argues about Dr. Hardin's right to relate his opinion on what the standard of care was.  The issue on appeal concerns defense counsel's solicitation of Dr. Hardin's opinion as to whether Peggy Grant actually orally consented prior to surgery.  The resolution of that issue is based on Grant's and the other witnesses' veracity.  

Prior to trial the court sustained plaintiff's motion 
in limine
 prohibiting testimony by defense experts indicating that plaintiff gave an oral consent.  At trial, after defense counsel's first elicitation of Hardin's opinion on veracity, plaintiff's attorney objected, and the court admonished the jury:

"
[T]his Doctor's opinion is to be received
 by you, ladies and gentlemen of the jury, 
only on the point that if you
, ladies and gentlemen of the jury, as finders of fact, 
find that the plaintiff did tell Dr. Petroff and Nurse Mueller that she wanted the tubal ligation
, 
then
 if that be your finding, 
in his opinion, that is adequate consent
.  But you have to make the factual determination of whether she actually did so."  (Emphasis added.)

Later, during cross-examination, the court reprimanded plaintiff's attorney for "missing the point" of the court's earlier rulings and admonitions.  In chambers the court continued to admonish plaintiff's attorney, indicating that the court believed it was attorney Levy and not defendant's lawyer who was encouraging the witness to testify as to whether Peggy Grant was believable.  The court stated in pertinent part:

"His opinion goes to the issue of whether, if it is assumed that she gave oral consent to Petroff and Mueller pre-operatively, then that would have met the standard of care.  That's as far as it goes."

This statement demonstrates that it was not attorney Levy who was misguided, but that the court misunderstood the nature of Hardin's testimony.  The trial court stated that it was not the doctor's function to advise the jury who to believe, yet clearly the doctor did just that several times during his examination.

At the close of Dr. Hardin's testimony, the court admonished the jury:  

"The jury is instructed to the extent this Doctor is purporting to testify and offer the opinion for you to consider that the plaintiff gave a consent, then you are to disregard that opinion."    

At this point it appears the court was concerned that Dr. Hardin had testified as to Peggy Grant's credibility and was attempting to cure the error.  Unfortunately, an admonition is not always a sufficient means of curing error.

Generally speaking, for error in the admission of evidence or testimony to be reversible, it must be substantially prejudicial, thereby affecting the outcome of the trial.  
Skelton v. Chicago Transit Authority
, 214 Ill. App. 3d 554, 573 N.E.2d 1315 (1991).  The trial court's instruction to disregard certain evidence can cure prejudice resulting from the jury's exposure to that evidence.  
Kim v. Evanston Hospital
, 240 Ill. App. 3d 881, 608 N.E.2d 371 (1992).  The defense argues that it was attorney Levy who elicited from Dr. Hardin an opinion on whether Grant was being truthful.  Defendant contends that because Levy induced the error, Grant cannot now complain that she was prejudiced by it.  

Notwithstanding the fact that plaintiff's attorney was successful in arguing his pretrial motion 
in limine
 on this point, and the fact that the trial court sustained plaintiff's objection at the outset of Hardin's testimony, Hardin was permitted to testify three times on direct as to Peggy Grant's veracity.  The trial court repeatedly admonished the jury that while Dr. Hardin could give an opinion as to whether preoperative oral consent met the standard of care, he could not give an opinion on whether such consent had in fact been obtained and that any such opinion should be disregarded.  The admonitions in this case, especially the last one the court made at the close of Hardin's testimony, presuppose that an error occurred.  Unfortunately, by this time Dr. Hardin had repeatedly made the point that he did not believe Peggy Grant.  Based on the record, we cannot find that attorney Levy was at fault.  Moreover, we find that the trial court's admonishments and instructions were not sufficient to cure the resulting prejudice.  Because Dr. Hardin's testimony provided strong support for Petroff's and Mueller's testimony that Grant in fact gave preoperative oral consent, we find that the erroneous admission of his testimony substantially affected the outcome of the trial.  The trial court's judgment is reversed, and this cause is remanded for a new trial.

Grant's final argument on appeal is that the trial court erred in denying her leave to file a third amended complaint, including count V, which sought punitive damages for willful and wanton battery.  The court's decision was based on section 2-1115 of the Code of Civil Procedure, which provides:

"In all cases, whether in tort, contract or otherwise, 
in which the plaintiff seeks damages by reason of
 legal, 
medical
, hospital, or other healing art 
malpractice
, no punitive, exemplary, vindictive or aggravated damages shall be allowed."  (Emphasis added.)  735 ILCS 5/2-1115 (West 1994).

(Nonpublishable material under Supreme Court Rule 23 omitted.)

Basically, the trial court ruled that the definition of malpractice is broad and encompasses the alleged battery here.  Plaintiff argues that the battery stands independent of plaintiff's allegation of healing art malpractice and, thus, does not violate section 2-1115 of the Code of Civil Procedure.  735 ILCS 5/2-1115 (West 1994).  

Our analysis begins with a determination of whether the claim is one in which the plaintiff seeks damages by reason of healing art malpractice, as defendant claims, or whether it is a simple case of battery, as the plaintiff claims.  In count V plaintiff charged:

"3. That on or around September 7, 1989, the Plaintiff entered the Southwestern Illinois Outpatient Surgical Center and *** Plaintiff consulted and employed the Defendant for compensation paid and/or to be paid, to provide her with proper gynecological medical and surgical care and treatment and *** to attend and perform certain surgical procedures on her, namely[,] a hysteroscopy, dilation and curettage, and pelviscopy.

4.  That on said date and time, the Defendant accepted employment for a certain consideration, pursuant to which he undertook, entered upon and rendered to Plaintiff, gynecological medical and surgical care and treatment, namely[,] a hysteroscopy, dilation and curettage, and pelviscopy.

5.  That unbeknownst to Plaintiff ***, the Defendant also performed the surgical procedure of tubal cautery and transection.

6.  That at the time of the medical and surgical care and treatment rendered to the Plaintiff and described above, the Plaintiff had not authorized the performance of the surgical procedure of tubal cautery and transection.

7.  Through the acts of performing the unauthorized surgical procedure of tubal cautery and transection upon the Plaintiff, the Defendant willfully and wantonly battered the Plaintiff."

It is apparent from these allegations, which are taken as true for purposes of the motion to dismiss, that the plaintiff in the instant case is not alleging that the tubal ligation was performed improperly.  Whether Dr. Petroff performed the tubal ligation correctly is irrelevant to count V because plaintiff alleges that Petroff had no authority to perform it in the first place.  Plaintiff's claim of malpractice in count I stems from Petroff allegedly performing the tubal ligation without utilizing the appropriate standard of care.  The question we must answer is, "Is plaintiff's claim in count V brought `by reason of healing art malpractice'"?

In 
Cohen v. Smith
, 269 Ill. App. 3d 1087, 648 N.E.2d 329 (1995), a patient and her husband filed suit against a hospital and a male nurse alleging battery, intentional infliction of emotional distress, and violation of the Right of Conscience Act (745 ILCS 70/1 
et seq.
 (West 1992)) due to the defendants' failure to honor the plaintiff patient's religious beliefs against being seen unclothed by a male.  The court held that the plaintiffs' claim was not one for medical malpractice, but that the plaintiffs' complaint stated causes of action for battery, intentional infliction of emotional distress, and violation of the Right of Conscience Act.   As was also the problem in 
Cohen
, it seems the only reason there is some hesitancy over the issue of plaintiff's claim under count V for the alleged battery that occurred in this case is because the contact took place in a hospital between a patient and her physician.  The physician-patient relationship does not change the nature of the underlying action.  What if Dr. Petroff had cut off Peggy Grant's leg while she was under anesthesia?  Would we deny the fact that a battery occurred simply because the doctor committed the act during an operation which Peggy Grant had contracted him to perform?  Peggy Grant's battery claim in the instant case arises independently of the alleged healing art malpractice.  The allegations constituting a cause of action for battery stem from an unconsented-to touching.  Just because plaintiff has a separate malpractice claim where nonconsent was an issue does not mean that an independent claim for battery should be precluded.

Therefore, we reverse the trial court's denial of leave to file the battery claim.  

In light of the foregoing, the judgment of the circuit court is reversed, and this cause is remanded for a new trial.

Reversed and remanded.  

WELCH, J., concurs.

JUSTICE RARICK, dissenting:

I respectfully dissent.

I cannot accept the majority's conclusion that the admission of Dr. Hardin's testimony was so prejudicial as to affect the outcome of the trial.  

It is evident that there was some confusion as to what, exactly, Dr. Hardin was testifying.  On direct examination he testified that based upon his examination of the records, the consent Grant gave was informed.  Plaintiff's counsel objected, however, believing that Dr. Hardin was being asked whether or not preoperative oral consent had been given, 
i.e.
, whether Grant was being truthful when she said she had not given preoperative consent.  The trial court attempted to clarify this for plaintiff's counsel and admonished the jury, but on cross-examination plaintiff's counsel asked Dr. Hardin what expertise he had to determine whether Grant or Dr. Petroff was telling the truth.  When defendant's counsel objected, the trial court again tried to clarify for plaintiff's counsel exactly what Dr. Hardin did and did not testify to.  Nevertheless, plaintiff's counsel asked several questions which elicited from Dr. Hardin an opinion with respect to Grant's veracity.  At the conclusion of Dr. Hardin's testimony, the trial court again admonished the jury that his testimony could only be considered on the issue of whether an oral consent met the standard of care, and to the extent that he gave an opinion on whether or not she gave consent, the jury was to disregard such testimony.

Reviewing the relevant portions of Dr. Hardin's testimony, I believe that it was plaintiff's counsel who misunderstood Dr. Hardin's testimony, and in attempting to cross-examine Dr. Hardin on what he thought Dr. Hardin said, plaintiff's counsel elicited from Dr. Hardin comments on Grant's veracity.  When a party introduces or elicits evidence, he cannot later complaint about its admission.  
Gillespie v. Chrysler Motors Corp.
, 135 Ill. 2d 363, 553 N.E.2d 291 (1990).

I also take issue with the majority's position that the admonishments given to the jury by the trial court were insufficient to cure the prejudice.  The trial court repeatedly admonished the jury that while Dr. Hardin could give an opinion as to whether preoperative oral consent met the standard of care, he could not give an opinion on whether such consent had in fact been obtained, and that any such opinion should be disregarded.  The trial court's admonishments could not have been more thorough or more clear.  I find it inconceivable that the jury misunderstood or ignored them.  

Finally, in view of the fact that both Dr. Petroff and nurse Mueller testified that Grant in fact gave preoperative oral consent, Dr. Hardin's testimony was cumulative at best and hardly sufficient to sway the outcome of the trial.  Furthermore, I note that Grant's testimony is not part of the record on appeal.

I also disagree with the majority's conclusion with respect to the trial court's denial of Grant's motion for leave to file a third amended complaint.  The trial court's ruling did not prevent Grant from introducing evidence on the allegation of infliction of emotional distress or battery; it merely prevented her from seeking punitive or exemplary damages based thereon.  The jury was instructed with respect to both the infliction of emotional distress count and the battery count.  The jury returned a general verdict for Dr. Petroff, and the return of a general verdict creates a presumption that all material issues upon which proof was offered were found in favor of the prevailing party.  
Boll v. Chicago Park District
, 249 Ill. App. 3d 952, 620 N.E.2d 1082 (1991); 
Rendleman v. ABA Building Maintenance, Inc.
, 222 Ill. App. 3d 367, 583 N.E.2d 703 (1991).  Because the jury found that no battery occurred, no prejudicial error could have arisen from the trial court's denial of Grant's request for leave to file the third amended complaint.

For the foregoing reasons, I dissent.