2005 OK CIV APP 28

**Matthew APPLEGATE, Plaintiff/Appellant,**

v.

**SAINT FRANCIS HOSPITAL, INC. an Oklahoma nonprofit corporation, John S. Marouk, D.O., an osteopathic Physician; Asheesh Dewan, M.D., Defendants/Appellees.**

**Roger Phillip Barton, M.D., Defendant.**

**No. 100,503.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 1, 2005.

Kenneth E. Adair, Okmulgee, OK, for Appellant.

Joseph A. Sharp, Matthew B. Free, Tulsa, OK, for Appellees St. Francis Hospital, Inc. and Asheesh Dewan, M.D.

Brian J. Goree, Tulsa, OK, for Appellee John S. Marouk.

SUBSTITUTE OPINION AFTER REHEARING THE COURT'S PRIOR OPINION HAVING BEEN WITHDRAWN

LARRY JOPLIN, Judge.

¶ 1 Plaintiff/Appellant Matthew Applegate (Plaintiff or Matthew) seeks review of the trial court's order granting the motions for summary judgment of Defendants/Appellees Saint Francis Hospital, Inc., (Hospital) an Oklahoma non-profit corporation, John S. Marouk, D.O. (Marouk) and Asheesh Dewan, M.D. (Dewan) (collectively Defendants) on Plaintiff's claim for medial battery. In this proceeding, Plaintiff asserts the existence of material facts in controversy, precluding the summary adjudication of his claim for medical battery.

¶ 2 In July 1998, Matthew was 16 years old and a passenger in a car that struck a tree. His cervical spine was fractured and dislocated. Matthew was rendered a quadriplegic at the scene of the accident and was transported to the Hospital.

¶ 3 Upon Matthew's admission to the Hospital, his father signed the "Consent to Diagnostic / Medical Treatment" form granting the Hospital and its medical staff permission "to administer any necessary or advisable medical ... treatment ..." Matthew's father did not note any exclusions, restrictions or limitations on the consent form.

¶ 4 When a physician completed the initial History and Physical, codeine was noted listed in the section, "Allergies." Consequently, Matthew wore an orange medical bracelet and had orange tape on his bed, bed rail and door, all indicating an allergy to codeine. Matthew was admitted to and remained in the Pediatric Intensive Care Unit (PICU) from July 15, 1998 through July 20, 1998 and underwent surgery. On July 21, 1998, he was moved to a pediatric patient floor of the Hospital, then transferred the next day to Broken Arrow Medical Center Rehabilitation.

¶ 5 When transferred from the PICU to the pediatric floor, Matthew experienced great discomfort and pain. A nurse brought Matthew a pill and his mother inquired as to its type. The nurse responded that it was Tylenol with codeine. Matthew's parents objected, pointing out his allergy to codeine. The nurse said that she would check with a doctor and returned, stating it was okay because Matthew had been receiving codeine all along. The nurse administered the pill to him.

¶ 6 Dr. Marouk testified that indeed several codeine derivatives, as well as Tylenol with codeine, had been prescribed while Matthew was in the PICU and that no allergic reaction to the codeine had been noted. It was undisputed in this case that although lay persons may think an allergy to a drug exists, the allergy may not truly exist. However, Plaintiff contends that the decision to prescribe and administer codeine violated the consent and information given. Defendants moved for summary judgment. Plaintiff ultimately dismissed all claims other than battery.[1]

¶ 7 In *Scott v. Bradford,* 1979 OK 165, 606 P.2d 554, 557 (Okla.1979) the Oklahoma Supreme Court stated that if "treatment is completely unauthorized and performed without any consent at all, there has been a battery."[2] The only two cases in Oklahoma that upheld imposition of liability based upon "medical battery" are surgical cases.[3] The Supreme Court upheld liability based upon battery when a surgeon removed fallopian tubes without the patient's consent during a caesarean section.[4] The Supreme Court also upheld liability based upon battery when a surgeon removed a bone during foot surgery when the patient's consent specifically excluded removal of bones.[5]

¶ 8 The *Scott* case dealt with allegations that the physician failed to act properly *before* surgery by not providing the patient with sufficient information on the risks associated with surgery. A foreseeable complication resulting from the surgery materialized. The *Scott* Court discussed battery but held that liability would rest, if at all, upon negligence.

¶ 9 On the same negligence analysis, the Wisconsin Supreme Court in *Trogun v.*

*Fruchtman,* 58 Wis.2d 569, 207 N.W.2d 297 (1973)[6] rejected liability for battery. The patient in *Trogun* experienced a foreseeable complication from medication prescribed. The Court held that drug therapy is a matter of professional judgment to be viewed in light of negligence standards, noting that the "typical situation wherein the battery theory of recovery has been utilized by a plaintiff-patient is in cases where a certain type of operation has been consented to, but in the course thereof the physician operates upon another part of the anatomy."[7]

¶ 10 The *Trogun* Court reasoned that expansion of the battery theory to a medication case *"does not fit comfortably within the traditional concepts of battery—the intent to unlawfully touch the person of another ... the act complained of is surely not of an antisocial nature usually associated with the tort of ... battery ..."*[8]

¶ 11 In *Scott,* the Oklahoma Supreme Court spoke broadly when it utilized the term "unauthorized *treatment*" in defining what constitutes "medical battery." We examine whether this language extends the doctrine of battery in Oklahoma beyond the surgery suite. As the precedent in Oklahoma for imposing liability based upon battery in medical cases is limited to conduct during surgery, we turn to cases in other jurisdictions for guidance. In doing so, we find two cases that extend battery to medication cases.

¶ 12 In *Duncan v. Scottsdale Medical Imaging, Ltd.,* 205 Ariz. 306, 70 P.3d 435 (2003) the Court held that a medical imaging provider could be held liable for battery when a patient explicitly conditioned consent to an

---

1. Plaintiff dismissed claims based upon negligence, lack of informed consent and intentional infliction of emotional distress.

2. *Scott v. Bradford,* 1979 OK 165, 606 P.2d 554 (rejection of battery theory of liability in lack of informed consent case after foreseeable complications materialized).

3. *White v. Hirshfield,* 1925 OK 385, 236 P. 406; *Rolater v. Strain,* 1913 OK 634, 137 P. 96.

4. *White v. Hirshfield,* 1925 OK 385, 236 P. 406; *See also Grant v. Petroff,* 291 Ill.App.3d 795, 226 Ill.Dec. 24, 684 N.E.2d 1020 (1997) (granted

leave to file battery claim when a tubal ligation was allegedly performed without patient consent).

5. *Rolater v. Strain,* 1913 OK 634, 137 P. 96.

6. Cited with approval in *Schreiber v. Physicians Insurance Company of Wisconsin,* 223 Wis.2d 417, 588 N.W.2d 26 (1999).

7. *Trogun v. Fruchtman,* 58 Wis.2d 569, 207 N.W.2d 297, 311 (1973).

8. *Id.* at 313.

"MRI" on being medicated only with either morphine or demerol. When the patient arrived for the MRI, the nurse told the patient that fentanyl would be administered. The patient objected, the nurse called the doctor, told the patient the orders had been changed to morphine and then secretly injected the patient with fentanyl.

¶ 13 In *Mink v. University of Chicago,* 460 F.Supp. 713 (N.D.Ill.1978) the Court held that a university and drug company could be held liable for battery after conducting a medical experiment in which women were given an undisclosed drug during prenatal care. The women were not told that they were part of a medical experiment and some of the women's children developed abnormalities from the medication administered.

¶ 14 The facts of *Duncan* and *Mink* render them generally consistent with Oklahoma precedent regarding the applicability of battery, as the care giver in *Duncan* violated express restrictions placed on the consent and the care givers in *Mink* were completely unauthorized to administer drug testing. A review of the evidentiary materials in the light most favorable to Plaintiff reveals that such facts are lacking. Here, as in *Scott,* a routine consent form was signed on behalf of the patient so treatment was not completely unauthorized.

¶ 15 In ruling on motions for summary judgment, factual matters are considered, but ultimately it is a matter of law whether a party is entitled to summary judgment. When reviewing a trial court's granting of summary judgment, an appellate court proceeds *de novo.* When evidentiary materials as a whole demonstrate undisputed facts on material issues that support but a single inference in favor of the moving parties, then summary judgment is appropriate.[9]

¶ 16 In the present case, the evidentiary materials submitted demonstrate no factual controversy on material issues and we find that summary judgment was properly granted because (1) the treatment was not completely unauthorized; (2) extending "medical battery" beyond surgical cases to include medication treatment is not warranted; and (3) providing medical history information, which may be relevant to a determination of negligence, did not vitiate nor restrict the signed general consent form.

¶ 17 The order of the trial court granting the motions for summary judgment of Hospital and Doctors is therefore AFFIRMED.

HANSEN, J., dissents; and MITCHELL, P.J., concurs.

---

9. *In re Real Property of Integris Realty Corp.,*      2002 OK 85, ¶ 5, 58 P.3d 200, 202–203.