PATRICIA K. COHEN *et al.*, Plaintiffs-Appellants, v. ROGER SMITH, Defendant-Appellee.—PATRICIA K. COHEN *et al.*, Plaintiffs-Appellants, v. ST. JOSEPH MEMORIAL HOSPITAL, INC., Defendant-Appellee.

Fifth District   Nos. 5—94—0203, 5—94—0204 cons.

Opinion filed March 24, 1995.

Phyllis Wohlferd, of Carterville, and Darrell Dunham, of Murphysboro, for appellants.

R. Corydon Finch, P.C., of Anna, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Patricia Cohen was admitted to St. Joseph Memorial Hospital (Hospital) to deliver her baby. After an examination, Cohen was informed that it would be necessary for her to have a cesarean section. Cohen and her husband allegedly informed her physician, who in turn advised the Hospital staff, that the couple's religious beliefs prohibited Cohen from being seen unclothed by a male. Cohen's doctor assured her husband that their religious convictions would be respected.

During Cohen's cesarean section, Roger Smith, a male nurse on staff at the Hospital, allegedly observed and touched Cohen's naked body. Cohen and her husband filed suit against Nurse Smith and the Hospital. The trial court allowed defendants' motions to dismiss. We reverse.

In reviewing a motion to dismiss for failure to state a cause of action, the court must view all well-pleaded facts in the light most favorable to the plaintiff. (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 836, 422 N.E.2d 86, 89.) A trial court may dismiss a cause of action for failing to state a cause of action, based solely on the pleadings, only if it is clearly apparent that no set of alleged facts can be proven which will entitle a plaintiff to recovery. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504, 565 N.E.2d 654, 657.) Therefore, we will consider only the facts alleged by the plaintiffs in their complaints.

This case was originally filed as two separate cases, one against Nurse Smith and the other against the Hospital. The cases were consolidated on appeal. There are strong similarities between the complaints filed, and the arguments made, in each case. Plaintiffs' complaints against both Nurse Smith and the Hospital are stated in three counts: (1) battery, (2) intentional infliction of emotional distress, and (3) violation of the Right of Conscience Act (745 ILCS 70/2 (West 1992)).

Attached to the complaint against Nurse Smith is an affidavit of plaintiffs' lawyer stating that due to time constraints imposed by the statute of limitations, he was unable to obtain the written affidavit of a health professional that is required by section 2—622 of the Civil Practice Law in cases based on healing art malpractice (735 ILCS 5/2—622 (West 1992)) (Healing Arts Malpractice Act). Defendants' motions to dismiss contended that the affidavit requirement of section 2—622 could not be waived. Plaintiffs subsequently filed a motion to amend their complaint, along with an affidavit of a licensed physician, in order to comply with section 2—622. The trial court denied plaintiffs' motion to amend and granted Nurse Smith's motion for involuntary dismissal based on plaintiffs' failure to comply with section 2—622. Plaintiffs' motions to set aside and reconsider were denied.

The trial court also dismissed the complaint against the Hospital, but it based that dismissal on the grounds that the Hospital owed the plaintiffs no duty. The complaint against the Hospital also included a separate count for intentional infliction of emotional distress, which was filed by Mr. Cohen. This is the only count that involves Mr. Cohen, despite the fact that he is listed as one of the plaintiffs in the captions of both complaints.

In both the trial court and on appeal, there has been much discussion over various tangential matters, but the two basic issues are: (1) whether the Healing Arts Malpractice Act applies to these cases; and (2) do plaintiffs' complaints state a cause of action for battery, for intentional infliction of emotional distress, and for relief under the Right of Conscience Act?

## I. APPLICABILITY OF THE HEALING ARTS MALPRACTICE ACT

Both defendants argue that the plaintiffs' complaints were properly dismissed because the plaintiffs failed to comply with the requirements of the Healing Arts Malpractice Act. The Act requires a plaintiff's attorney to file an affidavit of a licensed physician "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." (735 ILCS 5/2—622(a) (West 1992).) The purpose of requiring the filing of an affidavit is to deter the filing of frivolous suits against health care providers. *Peterson v. Hinsdale Hospital* (1992), 233 Ill. App. 3d 327, 329, 599 N.E.2d 84, 87.

Malpractice is defined as:

"Professional misconduct or unreasonable lack of skill. *** Failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services or to those entitled to rely upon them." Black's Law Dictionary 959 (6th ed. 1990).

The first step in our analysis is a determination of whether this claim is one "in which the plaintiff seeks damages *** *by reason of healing art malpractice*" (emphasis added), as the defendants claim, or whether it is a simple case of battery, as the plaintiffs claim.

The Restatement (Second) of Torts provides that an actor commits a battery if:

"(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

(b) a harmful contact with the person of the other directly or indirectly results." (Restatement (Second) of Torts § 13 (1965).)

Liability for battery emphasizes the plaintiff's lack of consent to the touching. (*Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 893, 318 N.E.2d 315, 323.) "Offensive contact" is said to occur when the contact "offends a reasonable sense of personal dignity." Restatement (Second) of Torts § 19 (1965).

Historically, battery was first and foremost a systematic substitution for private retribution. (W. Keeton, Prosser & Keeton on Torts § 9, at 41 (5th ed. 1984) (hereinafter Prosser).) Protecting personal integrity has always been viewed as an important basis for battery. (Prosser § 9, at 41.) "Consequently, the defendant is liable not only for contacts which do actual physical harm, but also for those relatively trivial ones which are merely offensive and insulting." (Prosser § 9, at 41.) This application of battery to remedy offensive and insulting conduct is deeply ingrained in our legal history. As early as 1784, a Pennsylvania defendant was prosecuted for striking the cane of a French ambassador. The court furthered the distinction between harmful offensive batteries and nonharmful offensive batteries:

> "As to the assault, this is, perhaps, one of that kind, in which the insult is more to be considered, than the actual damage; for, though no great bodily pain is suffered by a blow on the palm of the hand, or the skirt of the coat, yet these are clearly within the definition of assault and battery, and among gentlemen too often induce dueling, and terminate in murder." (*Republica v. De Longchamps* (1784), 1 U.S. (1 Dall.) 111, 1 L. Ed. 59, in Gregory, Kalven & Epstein, Cases & Materials on Torts 904-05 (1977).)

Causing actual physical harm is not an element of battery. "[A] plaintiff is entitled to demand that the defendant refrain from the offensive touching, although the contact results in no visible injury." Prosser § 9, at 41.

With these definitions in mind, we examine plaintiffs' allegations against Nurse Smith. In count 1, plaintiffs charge defendant with a battery:

> "1. That defendant, Roger Smith, on or about December 9, 1990, was acting in his capacity as an agent and employee of St. Joseph Memorial Hospital, Inc., which is located in Jackson County, Illinois;
>
> 2. That on or about December 9, 1990, the plaintiff, Patricia K. Cohen, was a patient admitted to St. Joseph Memorial Hospital, Inc. for the purpose of delivery of a baby, and after her admittance it was determined that the baby should be delivered by cesarean section;
>
> 3. That based upon information sufficient to form a belief, plaintiff alleges that Roger Smith was made aware that Patricia K. Cohen had strongly held and deeply ingrained moral and religious views which prohibited her from being seen or observed in an unclothed condition by a member of the opposite sex;
>
> 4. That Roger Smith is male and was a member of the operating team which was to perform a cesarean section upon Patricia K. Cohen;

5. That Patricia K. Cohen was informed, by and through her husband, Joe Cohen, by the physician who was to perform the cesarean section that Roger Smith's presence in the operating room was necessary for the procedure but the cesarean section could be performed without him seeing Patricia K. Cohen in an unclothed condition;

6. The physician who was to perform the cesarean section instructed Roger Smith that the operation was to be performed without any male seeing Patricia K. Cohen in an unclothed condition;

7. Relying about the assurances provided her by her physician, that no male would observe her in an unclothed condition, Patricia K. Cohen consented to have the cesarean section performed at St. Joseph Memorial Hospital, Inc.;

8. That Roger Smith did act so as to place himself in such a position so as to view and touch Patricia K. Cohen's naked, unclothed, body, and did in fact observe and touch her naked and unclothed body;

9. That based upon information sufficient to form a belief, plaintiff alleges that Roger Smith did intentionally touch and observe Patricia K. Cohen's naked and unclothed body although informed of Patricia K. Cohen's moral and religious beliefs regarding members of the opposite sex observing her in an unclothed condition;

10. That Roger Smith's actions were taken while Patricia K. Cohen was incapacitated, was on the surgical table, and was under the control of Roger Smith."

It is apparent from these quotations, which must be taken as true for purposes of the motion to dismiss, that the plaintiffs in the instant case are not alleging that the cesarean section performed on Cohen violated any medical standard or was performed incorrectly or that any attendant procedure was improper because of any deviation from any appropriate medical standard. The plaintiffs' claim is in no way based upon medical malpractice. Cohen alleges instead that Roger Smith knowingly violated her privacy interests and religious standards and beliefs by touching her without her consent.

The only reason there is some hesitancy over the issue of whether a battery occurred in this case is because the contact took place in a hospital between a medical professional and a patient. If Patricia Cohen had been struck in the nose by Nurse Smith on a public street, everyone would agree that a battery occurred, and under those limited facts, there would be no defense to the battery. In contrast, medical professionals are allowed to touch patients during the course of medical treatment because patients consent, either explicitly or

implicitly, to the touching. The violation of a plaintiff's right to bodily and personal integrity by an unconsented-to touching is the essence of a claim for battery. Therefore, it is not the plaintiffs who are seeking damages because of healing art malpractice; it is the defendants who are raising a defense based upon their positions in the healing art fields.

■ The fact that the defendants attempt to shield themselves from the plaintiffs' claim by calling this action a medical malpractice claim does not transform it into one. The question is whether "the plaintiff seeks damages for injuries *** *by reason of* medical, hospital, or other healing art *malpractice*" (emphasis added) (735 ILCS 5/2—622 (West 1992)), not whether the incident complained of occurred in a hospital setting or involved some medical treatment. It is the nature of plaintiffs' claim, not defendant's defense, that determines whether the provisions of section 2—622 are implicated. Consequently, it was unnecessary for plaintiffs to obtain a section 2—622(a) affidavit or a section 2—622(d) certification, and the trial court erred in dismissing the complaint against Nurse Smith.

During oral arguments the defense alleged that the plaintiffs brought their case under the informed consent provision of section 2—622(d) and failed to meet its procedural requirements. Section 2—622(d) provides:

> "When the attorney intends to rely on the doctrine of failure to inform of the consequences of the procedure, the attorney shall certify upon the filing of the complaint that the reviewing health professional has, after reviewing the medical record and other relevant materials involved in the particular action, concluded that a reasonable health professional would have informed the patient of the consequences of the procedure." 735 ILCS 5/2—622(d) (West 1992).

The plaintiffs in the present case did not rely upon the doctrine of "failure to inform of the consequences of the procedure." The plaintiffs had no grievance over how the medical procedure was performed or the medical consequences of the cesarean section. Rather, the plaintiffs' complaint addressed their fundamental right to refuse treatment that conflicts with their religious views.

## II. CAUSES OF ACTION

Counts I and II of the plaintiffs' complaint, battery and the intentional infliction of emotional distress, respectively, are based on the same factual basis that Patricia Cohen informed the Hospital and its employees of her religious views that she could not be viewed or touched by a male. Therefore, we will discuss these issues together.

## A. Intentional Infliction of Emotional Distress and Battery

Battery has already been defined and discussed. To state a cause of action for intentional infliction of emotional distress, a plaintiff must show:

"(1) extreme and outrageous conduct, (2) intent by the defendant to cause, or reckless disregard of the probability of causing emotional distress, (3) severe or extreme emotional distress suffered by the plaintiff, and (4) an actual and proximate causation of emotional distress by the defendant's outrageous conduct." *Tobias v. Winkler* (1987), 156 Ill. App. 3d 886, 896, 509 N.E.2d 1050, 1056.

The plaintiffs' complaint against Nurse Smith alleges that Smith touched Cohen's naked body after being informed of her moral and religious beliefs against such touching by a male. Similarly, the plaintiffs' complaint against the Hospital alleges that the doctor performing the surgery told Nurse Smith that the operation was to be performed without any male seeing Cohen naked. According to the complaint, despite being informed of Cohen's religious beliefs, Nurse Smith, an agent and employee of the Hospital, intentionally saw and touched Cohen's naked body.

The allegation that both Nurse Smith and the Hospital were informed in advance of plaintiffs' religious beliefs is important in this case, because the religious convictions of plaintiffs might not be those of most people who enter the hospital to give birth. As a matter of fact, plaintiffs' counsel candidly conceded that there would be no cause of action for battery if Patricia Cohen had been placed in Nurse Smith's and the Hospital's care in an emergency situation in which Patricia had been unable to inform the Hospital or its agents of her beliefs. Plaintiffs' attorney acknowledged that his clients' moral and religious views are not widely held in the community and, because of this, plaintiffs could state a claim against defendants only if the plaintiffs pled that the defendants had knowledge of those beliefs. But, he contends, the defendants' knowledge of the plaintiffs' religious beliefs was pleaded in their complaint. Specifically, plaintiffs contend that defendants' knowledge is clearly illustrated by an allegation in the plaintiffs' amended complaint that Nurse Smith requested the presence of the Murphysboro city police at the Hospital to prevent Mr. Cohen from objecting to Nurse Smith's presence in the operating room while Mrs. Cohen was naked and to physically restrain Mr. Cohen if necessary.

The fact that the plaintiffs hold deeply ingrained religious beliefs which are not shared by the majority of society does not mean that those beliefs deserve less protection than more mainstream religious

beliefs. The plaintiffs were not trying to force their religion on other people; they were only insisting that their beliefs be respected by the Hospital and the Hospital staff.

As we have stated previously, Patricia Cohen was not trying to, and was not entitled to, impose her religious beliefs on others. When she informed the Hospital of her moral and religious beliefs against being viewed and touched by males, the Hospital was free to refuse to accede to those demands. But, according to her complaint, when Cohen made her wishes known to the Hospital, it, at least implicitly, agreed to provide her with treatment within the restrictions placed by her beliefs.

Although most people in modern society have come to accept the necessity of being seen unclothed and being touched by members of the opposite sex during medical treatment, the plaintiffs had not accepted these procedures and, according to their complaint, had informed defendants of their convictions. This case is similar to cases involving Jehovah's Witnesses who were unwilling to accept blood transfusions because of religious convictions. (*In re Estate of Brooks* (1965), 32 Ill. 2d 361, 205 N.E.2d 435.) Although most people do not share the Jehovah's Witnesses' beliefs about blood transfusions, our society, and our courts, accept their right to have that belief. Similarly, the courts have consistently recognized individuals' rights to refuse medical treatment even if such a refusal would result in an increased likelihood of the individual's death. *Cruzan v. Director, Missouri Department of Health* (1990), 497 U.S. 261, 111 L. Ed. 2d 224, 110 S. Ct. 2841; *In re Baby Boy Doe* (1994), 260 Ill. App. 3d 392, 399, 632 N.E.2d 326, 330; *In re Estate of Longeway* (1989), 133 Ill. 2d 33, 44, 549 N.E.2d 292, 297; *In re Estate of Greenspan* (1990), 137 Ill. 2d 1, 558 N.E.2d 1194.

A person's right to refuse or accept medical care is not one to be interfered with lightly. As Justice Cardozo stated, "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages." *Schloendorff v. Society of New York Hospital* (1914), 211 N.Y. 125, 129-30, 105 N.E. 92, 93.

■ Knowing interference with the right of determination is battery. Our examination of the record reveals that facts charging that interference are pleaded in plaintiffs' complaint against Nurse Smith and against the Hospital. For purposes of a motion on the pleadings, a court must accept these facts as true. (*Business Development Services*, 96 Ill. App. 3d at 836, 422 N.E.2d at 89.) Accepting as true the plaintiffs' allegations that they informed defendants of their religious

beliefs and that defendants persisted in treating Patricia Cohen as they would have treated a patient without those beliefs, we conclude that the trial court erred in dismissing both the battery and the intentional infliction of emotional distress counts.

## B. The Right of Conscience Act

The Right of Conscience Act (Act) states:

"It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept *** the delivery of medical services and medical care whether acting individually, corporately, or in association with other persons ***." 745 ILCS 70/2 (West 1992).

The Act defines "Conscience" as:

"a sincerely held set of moral convictions arising from belief in and relation to God." (745 ILCS 70/3(e) (West 1992).)

The Act allows claims to be brought for its violation:

"Any person *** injured *** by reason of any action prohibited by this Act *** may commence a suit therefor, and shall recover *** damages ***. These damage remedies shall be cumulative, and not exclusive of other remedies afforded under any other state or federal law." 745 ILCS 70/12 (West 1992).

It is true, as the defendants argue, that the only case on the Act cited by plaintiffs states that the Act protects sincerely held "moral convictions arising from what are traditionally characterized as religious beliefs." (*Free v. Holy Cross Hospital* (1985), 153 Ill. App. 3d 45, 49, 505 N.E.2d 1188, 1190.) However, that statement was made in the context of distinguishing between ethical duties, which are not protected under the Act, and religious beliefs, which are protected. (*Free v. Holy Cross Hospital* (1985), 153 Ill. App. 3d 45, 49, 505 N.E.2d 1188, 1190.) *Free* was not attempting to define what actions constitute "traditional religious beliefs," as the defendants suggest.

■ The only definition offered by the Act is that the protection and respect of the Act is to be afforded "a sincerely held set of moral convictions arising from belief in and relation to God." (745 ILCS 70/3(e) (West 1992).) We must remember that this matter is before us on appeal from the dismissal of the pleadings. There is nothing in this limited record which indicates that the Cohens' beliefs are less than sincere or that they do not have some relation to their belief in God. Under these circumstances, we conclude that the trial court erred in dismissing the plaintiffs' Right of Conscience Act count.

■ Finally, the defendants argue that the plaintiffs failed to state any of the three alleged causes of action because the plaintiffs alleged some necessary elements of each of the three causes of action "on information and belief." However, pleading on information and

belief is permissible. Section 2—605 of the Illinois Civil Practice Law provides that even verified pleadings may be stated positively or upon information and belief. (735 ILCS 5/2—605 (West 1992).) "No complaint is bad in substance which contains such information as reasonably informs the defendant of the nature of the claim he is called upon to meet." *Stanley Magic-Door, Inc. v. City of Chicago* (1979), 74 Ill. App. 3d 595, 598, 393 N.E.2d 535, 537.

Based on the information found in the Cohens' complaint against Nurse Smith and the Cohens' complaint against the Hospital, we find that the trial court erred in dismissing both complaints.

No. 5—94—0203, Reversed and remanded.
No. 5—94—0204, Reversed and remanded.

MAAG, P.J., and HOPKINS, J., concur.