GERALDINE GRAGG, Indiv. and as Special Adm'r of the Estate of Ann Guintola, Deceased, Plaintiff-Appellant, v. DAVID CALANDRA *et al.*, Defendants-Appellees (J. Houck, Defendant).

Second District    No. 3—97—0719

Opinion filed July 6, 1998.—Rehearing denied August 4, 1998.

Barbara J. Clinite, of Chicago, for appellant.

Todd M. Porter, of Ruff, Weidenaar & Reidy, Ltd., of Chicago, for appellee David Calandra.

Timothy J. Ashe and Jennifer A. Keller, both of Cassiday, Schade & Gloor, of Chicago, for appellee Rabindra Malhotra.

William H. Reinking, of Hinshaw & Culbertson, of Lisle, and D. Kendall Griffith, Stephen R. Swofford, Alice K. Kush, and Christine L. Olson, all of Hinshaw & Culbertson, of Chicago, for appellee Hinsdale Hospital.

JUSTICE INGLIS delivered the opinion of the court:
Plaintiff, Geraldine Gragg, individually, and as special administrator of the estate of Ann Guintola, deceased, appeals the order of the trial court of Du Page County that dismissed the first count of her third amended complaint in favor of defendant Hinsdale Hospital (Hinsdale) and counts II through IV in favor of defendants Hinsdale and physicians David Calandra and Rabindra Malhotra (collectively defendants). Plaintiff alleged that defendants administered unwanted

medical procedures to her father, Florian Guintola, including open heart surgery and the continuation of life support. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Plaintiff alleged the following. Hinsdale owned and operated a hospital emergency room and medical care facility, including the Rooney Heart Institute. Hinsdale employed various physicians and other health care providers to see and treat patients. Hinsdale held itself out to the public as a medical facility providing emergency, specialized cardiac care, and inpatient care by qualified and competent physicians. Hinsdale represented to the public that it provided equipment and staff, including a cardiac catheterization laboratory, "to make the most of the golden hour after a heart attack."

On December 28, 1992, plaintiff and her mother went with Florian to the emergency room at Hinsdale where he was seen and examined by defendant doctors, who were apparent agents of Hinsdale and who led plaintiff and her mother to believe that they were agents of the hospital. Florian was examined by a physician who asked Ann to sign a consent for certain cardiac tests, including an angiogram. Plaintiff and her mother relied upon Hinsdale to provide heart catheterization equipment and staff, including reasonably qualified and competent heart specialists and physicians who would exercise due care and skill in the treatment of Florian. Plaintiff and her mother consented to catheterization by defendants as a result of such reliance. During the catheterization, performed by defendant Malhotra, Florian suffered a cardiac arrest and became unconscious and nonresponsive.

Following this, there was no reasonable likelihood that Florian would survive. Defendant Calandra and defendant J. Houck (who is not a party to this appeal) nevertheless proceeded to perform open heart bypass surgery on Florian.

Plaintiff alleged that defendants performed open heart surgery on Florian without first obtaining consent. Plaintiff also alleged that Hinsdale had a duty to Florian to permit only authorized treatment and surgical procedures with informed consent and was under a duty to obtain consent to surgery.

Florian sustained irreversible brain damage, remained nonresponsive, and could not survive without life support. Florian had a living will that stated that in the absence of his ability to give directions regarding extraordinary measures to sustain life, his family should honor his wishes to withhold such measures. Plaintiff and Ann repeatedly asked defendants to remove Florian from life support to honor his wishes. After requests were made by Florian's regular physician to

discontinue life support, a meeting was held with plaintiff, Ann, and others, including a nurse for defendant Calandra and an attorney for Hinsdale, to discuss Florian's living will. Following the meeting, Dr. Glassford, the medical staff director of Hinsdale, informed plaintiff and her mother that the hospital and doctors would not honor the living will. Florian never regained consciousness and died on January 5, 1993.

Plaintiff, in her capacity as administrator of Ann's estate and individually, brought count I of the third amended complaint against defendants under section 15 of the Rights of Married Persons Act (herein called the Family Expense Act) (750 ILCS 65/15 (West 1996)). Count II, brought by the estate, alleges that defendants violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1996)). Counts III, brought by plaintiff individually, and IV, brought by the estate, are based on intentional infliction of emotional distress. Defendants filed separate motions to dismiss. The trial court dismissed counts I through IV of the complaint against Hinsdale with prejudice. The trial court also dismissed counts II through IV against the other defendants with prejudice, finding that there was no just cause for delay of enforcement or appeal under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Count I against defendant physicians remains pending in the trial court. Plaintiff timely appeals.

■ We note that defendants' motions to dismiss were made pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 1996)). The legal theories for proceeding on a motion to dismiss under sections 2—615 and 2—619 differ. A section 2—615 attacks the legal sufficiency of the complaint by asserting that it fails to state a cause of action upon which relief can be granted. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1083 (1994). Under section 2—619, a party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter which avoids or defeats the claim. *T&S Signs, Inc.*, 261 Ill. App. 3d at 1083. Similar to a motion brought under section 2—615, a motion to dismiss under section 2—619 admits all well-pleaded facts. *Geick v. Kay*, 236 Ill. App. 3d 868, 874 (1992). A reviewing court is not required to defer to the trial court's judgment on a motion to dismiss, and we will review the matter *de novo*. *T&S Signs, Inc.*, 261 Ill. App 3d at 1084.

Plaintiff first contends that the trial court improperly dismissed count I against Hinsdale. In count I, plaintiff seeks recovery individually and as special administrator of Ann's estate for hospital expenses incurred by Florian under the Family Expense Act.

■ Initially, we note that plaintiff individually lacks standing to bring a claim under the Family Expense Act. Expenses of the family are those for which the husband and wife are liable. 750 ILCS 65/15 (West 1996). Thus, only a spouse may maintain an action against a tortfeasor under the statute for family expenses incurred due to injuries the victim's spouse sustained. See *Brown v. Metzger*, 118 Ill. App. 3d 855, 860 (1983). Just as parents cannot maintain an action for expenses incurred by their adult children, adult children may not maintain an action for their parents' medical bills. See *Rodgers v. Consolidated R.R. Corp.*, 136 Ill. App. 3d 191, 196 (1985). Here, plaintiff does not plead that she is obligated individually to pay Florian's medical expenses and therefore cannot bring an individual claim under the Family Expense Act. The trial court properly dismissed count I as to plaintiff individually.

Plaintiff as special administrator of Ann's estate alleged two separate injuries under count I. The first injury is based on the open heart bypass surgery performed without consent. The second injury arose from placing Florian on life support without consent. Plaintiff alleged that had she or Ann been informed of the proposed open heart surgery and Florian's condition, they would have withheld their consent for the surgery and life support measures. Plaintiff alleges that, as a direct and proximate result of defendants' actions of performing surgery without consent and refusing to discontinue life support, Ann became obligated for medical expenses. Hinsdale counters that the cause of action under the Family Expense Act does not survive the death of Ann. Hinsdale contends that, if a cause of action is created by statute and neither that statute nor any other provides for its survival, the action abates upon the death of the party, citing *Shapiro v. Chernoff*, 3 Ill. App. 3d 396 (1972). Hinsdale argues that, because neither the Family Expense Act nor the Survival Act (755 ILCS 5/27—6 (West 1996)) provides a remedy for survival, the action abated on the death of Ann. We disagree.

■ The law determining the abatement or survival of actions is governed by common-law rules and statutory provisions changing the common law. *Shapiro*, 3 Ill. App. 3d at 401. Application of the correct rule depends upon the nature of the action to which it is applied. Therefore, we must characterize the theory of recovery that plaintiff alleges in count I.

■ Here, plaintiff alleges that Hinsdale wrongfully caused medical expenses to be incurred. Plaintiff is not seeking recovery for Florian's injuries but, rather, plaintiff seeks a property right to recover expenses based on the hospital's liability. The Family Expense Act did not create the liability; it merely provides a mechanism for recovery. Where

recovery does not rest on the statute but upon a property right, it survives. See, *e.g., McDaniel v. Bullard*, 34 Ill. 2d 487, 491-92 (1966). Thus, we find that the action is not dependent upon Ann's survival. We now proceed with our review of the trial court's dismissal of count I against Hinsdale.

Hinsdale argues that the trial court correctly found that count I was grounded on healing art malpractice, for which a section 2—622 health professional report (735 ILCS 5/2—622 (West 1996)) must be attached. Hinsdale contends that the physician's report submitted by plaintiff insufficiently complied with the proper standards. Plaintiff argues that the underlying action sounds in battery because the open heart surgery and life support were given without consent and, therefore, a section 2—622 report is unnecessary. We agree.

■ Liability for battery emphasizes the plaintiff's lack of consent to a touching. *Cohen v. Smith*, 269 Ill. App. 3d 1087, 1090 (1995). A defendant may be liable not only for contacts that do actual physical harm, but also for those relatively trivial ones that are merely offensive and insulting. *Cohen*, 269 Ill. App. 3d at 1091. "[A] plaintiff is entitled to demand that the defendant refrain from the offensive touching, although the contact results in no visible injury." W. Keeton, Prosser & Keeton on Torts § 9, at 41 (5th ed. 1984).

■ We held in *Kus v. Sherman Hospital*, 268 Ill. App. 3d 771, 779 (1995), that the plaintiff's medical battery claim was viable under Illinois law. We recognized that in Illinois two causes of action exist for lack of consent to medical procedures. One action is based on negligence and the other is based on battery. *Kus*, 268 Ill. App. 3d at 779. In *Guebard v. Jabaay*, 117 Ill. App. 3d 1, 7 (1983), the court held that where an unauthorized surgeon operates, he commits a technical trespass to the patient resulting in the intentional tort of battery. It is not the hostile intent of the defendant but rather the absence of consent by the plaintiff that is at the core of an action for battery. *Gaskin v. Goldwasser*, 166 Ill. App. 3d 996, 1012 (1988).

■ Plaintiff's complaint alleges that Hinsdale operated on Florian without consent and maintained Florian on life support against the wishes expressed in his living will and his family's wishes. Here, the violation of a plaintiff's right to bodily and personal integrity by an unconsented-to touching is the essence of the claim for battery. By stating that surgery and treatment were performed without consent, plaintiff has stated a claim for medical battery. See *Grant v. Petroff*, 291 Ill. App. 3d 795, 804-05 (1997); *Cohen*, 269 Ill. App. 3d at 1090-93; *Kus*, 268 Ill. App. 3d at 779.

Moreover, it is clear that plaintiff does not allege any deviation from the appropriate medical standards. Plaintiff's claim under count

I against the hospital is not based upon medical malpractice. Consequently, it is unnecessary to provide a section 2—622 report.

■ Hinsdale contends that it did not have the duty to obtain consent to perform the surgery and therefore cannot be liable. Under ordinary negligence principles, it generally is the duty of the physician, not the hospital, to obtain consent. *Pickle v. Curns*, 106 Ill. App. 3d 734, 738 (1982). In this instance, the alleged liability arises from an unconsented-to touching.

Furthermore, under the doctrine of apparent authority, a hospital can be held vicariously liable for the negligent acts of a physician providing care at a hospital, regardless of whether the physician is an independent contractor, unless the patient knows, or should have known, that the physician is an independent contractor. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 524 (1993). In *Gilbert*, the decedent's estate brought a medical malpractice and wrongful death action against the doctor who treated the decedent and the hospital. The hospital contended that it was not vicariously liable for the doctor's alleged negligence because he was not the hospital's agent or employee. In so holding, the supreme court, concerned with the realities of modern hospital care, held:

> " '[H]ospitals increasingly hold themselves out to the public in expensive advertising campaigns as offering and rendering quality health services ***. Modern hospitals have spent billions of dollars marketing themselves, nurturing the image with the consuming public that they are full-care modern health facilities. All of these expenditures have but one purpose: to persuade those in need of medical services to obtain those services at a specific hospital.' " *Gilbert*, 156 Ill. 2d at 520, quoting *Kashishian v. Port*, 167 Wis. 2d 24, 38, 481 N.W.2d 277, 282 (1992).

The court further observed that modern hospital care involves the reasonable expectations of the public:

> " '[G]enerally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there. Absent a situation where the patient is directed by his own physician or where the patient makes an independent selection as to which physicians he will use while there, it is the reputation of the hospital itself upon which he would rely. Also, unless the patient is in some manner put on notice of the independent status of the professionals with whom it might be expected to come into contact, it would be natural for him to assume that these people are employees of the hospital.' " *Gilbert*, 156 Ill. 2d at 521, quoting *Arthur v. St. Peters Hospital*, 169 N.J. Super. 575, 583, 405 A.2d 443, 447 (1979).

Under the doctrine of apparent authority, a hospital can be held

vicariously liable for the negligent acts of a physician providing care at the hospital. We see no reason why this reasoning should not apply to an intentional tort, as in this case, where, under the guise of apparent authority, an agent commits an intentional tort while furthering the business of the principal. See *Bonnem v. Harrison*, 17 Ill. App. 2d 292, 298-99 (1958).

■ Hinsdale next argues that it cannot be liable for the acts of the defendant physicians because plaintiff failed to properly plead a principal-agent relationship. Hinsdale argues that, other than alleging that the hospital represented to the public that it provided equipment, staff, and emergency care by the physicians, plaintiff made no specific allegations about how the hospital held out the physicians as its agents.

The supreme court in *Gilbert* also rejected a similar argument. There, the plaintiff simply alleged that the physician was an agent or employee of the hospital. *Gilbert*, 156 Ill. 2d at 527. Here, plaintiff alleges that the physician defendants were apparent agents of Hinsdale, did not advise plaintiff otherwise, and led plaintiff to believe that they were agents of Hinsdale. We find plaintiff adequately pleaded apparent agency. Accordingly, we reverse the trial court's dismissal of count I against Hinsdale brought by plaintiff in her capacity as administrator of Ann's estate. We reiterate that the trial court properly dismissed count I as to plaintiff individually. In all other respects, count I against defendant physicians remains.

Plaintiff next argues that the trial court improperly dismissed count II against all defendants for a violation of section 2 of the Consumer Fraud Act (815 ILCS 505/2 (West 1996)). Defendants counter that any action under the Consumer Fraud Act abated at Florian's death; that, even if the claim survives, the conduct arising out of the practice of medicine is not a "trade or commerce" within the meaning of the Act; and that the allegations fail to state a claim for such relief because they allege medical malpractice and only tangentially relate to the business aspects of the medical profession.

●10 In order to state a cause of action under the Consumer Fraud Act, a complaint must set forth specific facts that show a deceptive act or misrepresentation of a material fact by the defendant, the defendant's intention that the plaintiff rely on the deception or misrepresentation, and that the deception or misrepresentation occur in the course of business. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996); *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 492 (1992). The complaint must set forth specific facts that establish each element of the claim. *E&E Hauling*, 153 Ill. 2d at 492. The representations can only be material if some connection is shown be-

tween those representations and the injury. *E&E Hauling*, 153 Ill. 2d at 492. The deceptive statements must proximately cause the alleged injury. *Connick v. Suzuki Motor Co.*, 275 Ill. App. 3d 705, 722 (1995).

We find that plaintiff fails to state a claim for relief under the Consumer Fraud Act. Plaintiff alleges that Hinsdale and defendants represented to the public that patients for cardiology services would promptly receive care for cardiac patients who would be in surgery within an hour. Plaintiff further alleges that defendants had a complete cardiovascular center with a catheterization lab and would help patients choose the right doctor. However, plaintiff does not specify how the advertisements were false or deceptive or how the advertisements caused any damages. Plaintiff fails to show a connection between those representations and the injury that surgery was performed without consent and that Florian was placed on life support against his permission. In short, plaintiff simply does not allege a deceptive act or misrepresentation by defendants that was made with the intent that plaintiff rely upon them. Accordingly, we find that the trial court properly dismissed count II, as there are no allegations supporting the conclusion that the misrepresentations made by defendants were fraudulent or that the injury resulted from them.

Plaintiff next contends that the trial court improperly dismissed the intentional infliction of emotional distress claims set forth in counts III and IV of her complaint. Count III was brought in plaintiff's individual capacity, and count IV was brought in plaintiff's capacity as special administrator of her mother's estate.

To state a claim for intentional infliction of emotional distress, the plaintiff must allege that the defendant engaged in extreme and outrageous conduct; that the defendant acted with the intent or knowledge that there was at least a high probability that his or her conduct would inflict severe emotional distress and with the reckless disregard of that probability; and that the plaintiff experienced severe emotional distress. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 89-90 (1976). These factors must be applied on a case-by-case basis, and the determination of whether the conduct is actionable is to be made pursuant to an objective standard. *Miller v. Linden*, 172 Ill. App. 3d 594, 596-97 (1988). The distress inflicted must be so severe that no reasonable man could be expected to endure it. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988).

Plaintiff alleged that defendants "verbally abused" and "repeatedly insult[ed] and injure[d]" and "wilfully and wantonly inflict[ed]" severe emotional distress on her and her mother by repeatedly accusing them in a public area in the presence of others of trying to kill Florian; by continuing life support without good cause, knowing

that plaintiff and her mother were under emotional distress; by refusing to honor Florian's living will and family requests, knowing that their refusals were themselves causing plaintiff and her mother great emotional distress; and by refusing to perform an EEG test or to report the results of such a test, knowing that the test would likely confirm that there was no brain activity.

Plaintiff relies on *Wall v. Pecaro*, 204 Ill. App. 3d 362 (1990). In that case, the plaintiff sought medical treatment from the defendant regarding a tumorous growth in the roof of her mouth. The defendant knew that the plaintiff did not have cancer but recommended that the plaintiff submit to unnecessary surgery that would have resulted in the removal of half of the plaintiff's face and the loss of her fetus. The defendant repeatedly told her that if she failed to undergo the procedures, her cancer would spread rapidly. After the plaintiff told the defendant that he was discharged, the defendant continued to insist that she allow him to perform the procedures, and he even called her at home. The court found the defendant's conduct outrageous because the defendant knew or had reason to know that the plaintiff was peculiarly susceptible to emotional distress due to her pregnancy, especially in light of the fact that the procedures he recommended would have resulted not only in the loss of her viable fetus but also the loss of half her face. *Wall*, 204 Ill. App. 3d at 368-69.

Plaintiff also relies on *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1 (1992), and *Cohen*, 269 Ill. App. 3d 1087. The defendant in *Kolegas* knew that the plaintiff's wife and child were afflicted with "Elephant Man's" disease and that the plaintiffs were promoting a festival to promote public awareness of the disease, yet he made statements during a radio program implying, among other things, that the plaintiff's wife was so hideous no one would marry her except under duress. Similarly, the defendant in *Cohen* knew that, because of the restrictions placed on the plaintiff by her religion, the plaintiff would be particularly susceptible to emotional distress if the defendant did not abide by those restrictions, yet the defendant allowed a male nurse to view and touch the plaintiff. *Cohen*, 269 Ill. App. 3d at 1095-96.

Plaintiff alleges that she and her mother were in such an emotional state because of Florian's condition that they were more susceptible to emotional distress and that defendants' conduct adversely affected their emotional state. Like the defendants in *Wall*, *Kolegas*, and *Cohen*, defendants in this case knew or had reason to know that plaintiff and Ann were extremely distraught because of Florian's condition, yet defendants repeatedly accused plaintiff and her mother of trying to kill Florian. Under the circumstances, there was a high probability that severe emotional distress would follow, but

defendants consciously disregarded it. We agree with plaintiff that this conduct could be deemed outrageous by a jury.

Defendants argue that they had a legitimate objective in sustaining Florian's life. Although a defendant may reasonably believe that his objective is legitimate, it does not provide him with *carte blanche* to pursue that objective by outrageous means. *McGrath*, 126 Ill. 2d at 88. In the present context, considering the emotional state of plaintiff and her mother and that defendants knew or should have known of their emotional state, defendants' actions of accusing plaintiff and her mother of trying to kill Florian could be considered so mortifying and callous as to amount to outrageous conduct. We find that plaintiff adequately alleged an extreme and outrageous course of action. Accordingly, the trial court erred in dismissing counts III and IV against defendants for intentional infliction of emotional distress.

■ In closing, we note that, because counts III and IV are based on an intentional tort, the doctrine of transferred negligence is inapplicable and there is no need to file a section 2—622 report. However, punitive damages may not be assessed as an additional recovery where the conduct arises from intentional infliction of emotional distress. *Knierim v. Izzo*, 22 Ill. 2d 73, 87-88 (1961); *Morrison v. Sandell*, 112 Ill. App. 3d 1057, 1060 (1983).

For the foregoing reasons, that part of the judgment of the circuit court of Du Page County that dismissed count I brought by plaintiff as administrator of Ann's estate against Hinsdale is reversed, and the cause is remanded for further proceedings consistent with this order. That part of the judgment of the circuit court of Du Page County that dismissed count II against defendants is affirmed. That part of the judgment of the circuit court of Du Page County that dismissed counts III and IV is reversed, and the cause is remanded with directions to strike those portions of counts III and IV asking for punitive damages.

Affirmed in part and reversed in part; cause remanded with directions.

COLWELL and HUTCHINSON, JJ., concur.