2023 IL App (2d) 220110-U
No. 2-22-0110
Order filed January 11, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-209 |
| KENDALL R. MORRISON, | ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's convictions of aggravated battery. Defendant made physical contact of an insulting or provoking nature with two police officers by (1) slapping away the hand of one officer as he gestured for defendant to halt and (2) kicking the other officer in the chest as he tried to restrain defendant.

¶ 2    Defendant, Kendall R. Morrison, was charged with, among other things, two counts of aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2018)). These counts alleged that defendant knowingly made physical contact of an insulting or provoking nature by slapping the hand of one arresting officer and kicking another arresting officer in the chest. A bench trial resulted in defendant's conviction of both counts of aggravated battery and one count of resisting

a peace officer (*id.* § 31-1(a-7)), which was based on a separate act. After the court sentenced defendant to concurrent terms totaling four years' imprisonment, he timely appealed. Defendant argues that he was not proven guilty of the two counts of aggravated battery beyond a reasonable doubt. We disagree. Thus, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On July 4, 2019, at around 11:30 p.m., defendant drove up to a group of people in a residential area in Plano. He exited his vehicle and began arguing with the group. During the argument, defendant said he had a gun and reached toward his waist.[1] The police were called. Defendant left the scene on foot.

¶ 5     Officer Scott Hogan testified that he arrived at the scene in response to a reported disturbance. After talking to the group of people with whom defendant had argued, Hogan noticed defendant down the street, yelling. Defendant matched the physical description that the group had provided Hogan. Hogan alerted defendant that he was a police officer and ordered him to stop. Defendant took off running. Hogan chased him on foot.

¶ 6     During the pursuit, defendant slowed to a walk. Hogan ordered defendant to get on the ground and put his hands behind his back. Defendant refused and walked away. Hogan followed defendant and drew his taser. Defendant yelled at Hogan not to point the taser at him. Hogan fired the taser, but it failed to contact defendant. Defendant again walked away from Hogan and continued disobeying his orders.

_____

[1]The two weapon offenses with which defendant was charged are not at issue on appeal, as the State dismissed one of those charges before trial and defendant was found not guilty of the remaining charge.

¶ 7    Deputy Michael Denyko testified that he arrived and aided Hogan.  Denyko, who knew defendant from prior encounters, stood at an angle facing defendant while he walked toward Denyko.  Denyko put his hand up and told defendant to stop.  Defendant "swatted [Denyko's] hand down."  According to Hogan, Denyko reached for one of defendant's arms.  In response, defendant moved his left arm in "an outward circular motion" and "swatted [Denyko's] hand away."  Denyko testified that this contact did not injure him.

¶ 8    While Denyko and Hogan attempted to grab hold of defendant and restrain him, a scuffle ensued.  Using a knee strike, Hogan and Denyko eventually moved defendant to the ground on a driveway near where Denyko parked his squad car.  Defendant continued to resist by flailing his arms and kicking.  Hogan stated that when he attempted to restrain the lower half of defendant's body, "defendant kicked [him] in the chest."  Hogan asserted that defendant kicked him in the chest "[m]ultiple times."  Although Hogan suffered no chest injuries from these kicks, he suffered knee scrapes during the struggle on the ground.

¶ 9    Defendant swore at the officers throughout the encounter.  According to Hogan, defendant said, "Fuck you, bitch" and "other swear words [Hogan] [did not] specifically recall."  On cross-examination, Hogan acknowledged that he had not reviewed the entire video of the incident as recorded by Denyko's dashboard camera and so was uncertain whether defendant specifically said, "Fuck you, bitch."  After defense counsel played the first four minutes of Denyko's squad-car video to refresh Hogan's memory, counsel asked, "At no point does [defendant] say to you the specific words of 'fuck you bitch,' is that correct?"  Hogan answered, "There were multiple times during the audio where [dialog] was muffled or unintelligible."  On redirect, Hogan confirmed that, on cross-examination, he had "said [he] didn't hear 'fuck you, bitch' because [the audio] was muffled and unintelligible in portions."  Hogan testified that he did hear defendant say " 'bitch ass

n***' " (twice); " 'get the f*** off me' " (twice); " '[s]tupid p***' " (once); " 'dumb ass' " (once); " '[s]tupid ass' " (four times); " '[b]itch ass' " (once); " 'bitch' " (eight times); " '[y]ou bitch is bitches;' " and " 'f***.' "

¶ 10    Other officers arrived on the scene. Defendant continued to resist and disobey the officers' orders. The officers successfully tased defendant and obtained control over him. Hogan estimated that he wrestled with defendant for two to three minutes before defendant was restrained.

¶ 11    The State played the "first five to six minutes" of Denyko's squad-car video for the trial court. The video does not visually depict what transpired, as the action takes place just off camera. Although it is dark outside, the area is well lit. The outdoor lights of the homes in the area are on, and a very bright streetlamp is mere feet from where defendant wrestles with the officers. The officers are in uniform, wearing bulletproof vests.

¶ 12    In the audio of the recording, which is at times muffled or unintelligible, the police order defendant to stop, get on the ground, and put his hands behind his back. At one point, one officer demands that defendant "get on the f*** ground." Defendant laughs and repeatedly asks the officers why they want to stop and arrest him. Defendant also argues with the officers and swears, saying things like what Hogan described after watching the video. The exact phrase, "F** you, bitch," is not heard. Defendant continues laughing and mocking the officers, saying at one point, "You all n*** think you all got something, huh, bitch." Other officers arrive on the scene, and one officer (presumably Denyko) calls defendant by name and asks him to relax. After defendant is handcuffed, one officer (presumably Hogan) tells defendant that he is "going to jail for two felonies at least." Defendant asks, "What felonies, bitch?" The officer, sounding somewhat surprised, replies that defendant "hit" him. Defendant asserts, "I didn't hit you, shit." The officer

responds, "Yes, you did."[2]  Defendant continues to be argumentative.  He swears at the officers while also laughing.  He yells, "Tough ass bitch."  Toward the end of the first five minutes, another officer asserts, "I want him charged, too."  Presumably, Denyko made this statement, as the statement is clear and louder than the prior statement about charging defendant with at least two felonies.

¶ 13    In finding defendant guilty of two counts of aggravated battery and one count of resisting a peace officer, the trial court stated:

> "I've also considered the testimony of *** Hogan.  I find him to be a credible witness as to what occurred when he responded to [the scene] and then [followed defendant].
>
> And with respect to his testimony, although his memory is being refreshed, I do not believe that he was biased or prejudiced in any fashion and that he testified truthfully with respect to the matter involving himself as well as the other police officers that evening."

The court continued:

> "With respect to [Denyko's] testimony as to what occurred, I find him to be a credible witness as well regarding his testimony about the events of July 4th or the early morning hours of July 5th pertaining to his involvement in the incident with [defendant]."

¶ 14    Defendant moved for a new trial, arguing, among other things, that he did not knowingly make physical contact of an insulting or provoking nature by kicking Hogan or slapping Denyko.

---

[2]During closing argument, defense counsel played the exchange about potential charges to show that defendant denied hitting Hogan, and, thus, defendant did not knowingly make physical contact with Hogan that was insulting or provoking.  The State objected, arguing that the identities of the voices were not known.  The trial court overruled the objection.

The trial court denied the motion without elaboration and sentenced defendant. This timely appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    At issue in this appeal is whether defendant was proven guilty beyond a reasonable doubt. "It is well settled that, when reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (Emphasis omitted.)" (Internal quotation marks omitted.) *People v. Cline*, 2022 IL 126383, ¶ 25. "All reasonable inferences from the evidence must be drawn in favor of the prosecution." *Id.* "This court will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *Id.*

¶ 17    Defendant concedes that the State proved him guilty beyond a reasonable doubt of resisting a peace officer, based on evidence that "he was not heeding the officers' verbal directives and that Officer Hogan skinned his knees in the course of physically restraining the resistant [defendant]." However, he does challenge the evidence supporting his two convictions of aggravated battery. A defendant commits aggravated battery as charged here when in committing a battery, other than discharging a firearm, he knows that the person battered is a peace officer performing his official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West 2018). Defendant does not deny that he knew Hogan and Denyko were peace officers performing their official duties. He denies, rather, that he committed a battery. A defendant commits battery when he knowingly and without legal justification (1) causes bodily harm to another or (2) makes physical contact with another that is insulting or provoking. *Id.* § 12-3(a).

¶ 18    *Defendant* argues that he did not act "knowingly." "A defendant acts with 'knowledge' when [he] is 'consciously aware' that [his] conduct is 'practically certain' to cause the result." *People v. Trajano*, 2018 IL App (2d) 160322, ¶ 23 (quoting 720 ILCS 5/4-5(b) (West 2008)). "Knowledge is usually proved by circumstantial, rather than direct, evidence." *Trajano*, 2018 IL App (2d) 160322, ¶ 24. "Thus, knowledge may be established by evidence of the defendant's acts, statements, or conduct, as well as the surrounding circumstances, that supports a reasonable inference that the defendant was consciously aware that the result was practically certain to be caused." *Id.* "Whether a defendant acted with knowledge is a question of fact." *Id.* ¶ 23. Questions of fact are resolved by the finder of fact, which in this case was the trial court. See *People v. J.S.*, 103 Ill. 2d 395, 409 (1984).

¶ 19    The State charged defendant with knowingly making physical contact of an insulting or provoking nature when he slapped Denyko and kicked Hogan. Defendant argues that the State failed to prove that he knowingly made insulting or provoking contact with the officers. Factors determining whether contact was insulting or provoking include the type of contact, the context, the relationship of the parties, and the victim's reaction at the time. *People v. Ward*, 2021 IL App (2d) 190243, ¶¶ 51-53. "[A] victim does not have to testify that he or she was insulted or provoked by a defendant's physical contact." *Id.* ¶¶ 56, 65. Rather, all that is required is "evidence *** from which a trier of fact could logically infer that the victim was insulted or provoked." *Id.* ¶ 56.

¶ 20    With these principles in mind, we turn to the facts presented in this case. Viewing the evidence in the light most favorable to the State—which we must do (*Cline*, 2022 IL 126383, ¶ 25)—we conclude that the trial court could logically infer that defendant knowingly made contact of an insulting or provoking nature when he (1) slapped Denyko's hand and (2) kicked Hogan in the chest. As for Denyko, he stood facing defendant as he approached. Denyko held out

his hand to stop defendant. Instead of stopping, turning, or walking around Denyko, defendant continued to walk toward Denyko, dismissing him by slapping his hand away as if to continue past him. From this evidence, the trial court could infer that defendant knowingly made contact of an insulting or provoking nature when he slapped Denyko. As for Hogan, the evidence revealed that defendant did not aimlessly kick at him. Rather, while directing various profanities at him, defendant kicked Hogan in the chest multiple times for two or three minutes, saying at one point directly to Hogan, "Fuck you, bitch." As with defendant's slapping Denyko, the trial court could infer that defendant knowingly made contact of an insulting or provoking nature when he kicked Hogan in the chest. Contact far less significant than defendant's contact here can be deemed insulting or provoking under the battery statute. See *Cohen v. Smith*, 269 Ill. App. 3d 1087, 1091 (1995) (noting that a defendant will be liable for battery based on insulting or provoking contact even for relatively trivial contact that is merely offensive). The contact was insulting or provoking whether viewed from the officers' (the victims') subjective standpoint (*Ward*, 2021 IL App (2d) 190243, ¶¶ 51-52) or assessed objectively by a court (*People v. Williams*, 2020 IL App (4th) 180554, ¶ 50).

¶ 21    Supporting our holding that the contact here was insulting or provoking is *People v. Fultz*, 2012 IL App (2d) 101101. There, officers on patrol saw a man at a backyard barbeque who was wanted on an outstanding warrant. *Id.* ¶ 13. Other officers arrived on the scene, including Officer Josh Horton. *Id.* ¶¶ 5, 25. The man wanted on the outstanding warrant was arrested, and Horton was told to arrest the defendant's mother, who had obstructed the police. *Id.* ¶¶ 14, 25. Horton went to the back of the home where the barbeque was being held and found the defendant's mother. *Id.* Horton testified that he was a few feet away from the defendant's mother when the defendant " 'stepped between' " his mother and Horton. *Id.* ¶ 25. Horton stated that the defendant then " 'put

his hands on' " Horton's chest. *Id.* Horton indicated that the defendant's hands were open with his fingers spread. *Id.* Horton testified that, with enough force to stop Horton's movement, the defendant said, " 'you are not taking my mom.' " *Id.* Horton stated that he removed the defendant's hands from his chest and pushed the defendant out of the way. *Id.* The defendant stepped aside. *Id.* The remaining officers who testified either were not asked if they saw the defendant press his hand against Horton or denied seeing such contact; the defendant himself denied having any physical contact with Horton that night. *Id.* ¶¶ 15, 17, 19, 29. A jury found the defendant guilty of, among other things, the aggravated battery of Horton, and the defendant appealed. *Id.* ¶¶ 33, 38.

¶ 22    On appeal, this court determined that the defendant was proved guilty beyond a reasonable doubt of the aggravated battery of Horton. *Id.* ¶ 50. In reaching that conclusion, we observed:

> "The jury could have reasonably inferred that [the] defendant *stepped in front* of Horton with outstretched hands intending to physically stop him. Thus, the jury could have reasonably inferred that, where [the] defendant knew that Horton was an officer acting in the performance of his duties, and he stepped in front of Horton with his arms extended, the resulting contact, which was sufficient to stop Horton's forward movement, was a knowing insult or provocation. The jury could also have reasonably inferred that Horton was insulted and/or provoked where he reacted by pushing [the] defendant aside." (Emphasis in original.) *Id.*

¶ 23    So too here. The trial court could infer that Denyko was insulted or provoked when defendant trivialized Denyko's attempt to stop defendant by slapping the deputy's hand away. Moreover, if defendant's flippant slapping of Denyko's hand was insulting or provoking, then certainly defendant's kicking Hogan in the chest while saying, "Fuck you, bitch," was also

insulting or provoking. Moreover, like in *Fultz*, the court could infer that Denyko and Hogan were insulted or provoked based on their immediate reactions to defendant's conduct. As officers, Denyko and Hogan were aware of what actions cross the line of resisting a peace officer and constitute battery. Right after defendant was detained, Hogan told defendant that he wanted defendant charged for hitting him, and Denyko later indicated that he, too, wanted defendant charged.

¶ 24    Citing *People v. Hill*, 2020 IL App (1st) 162119, defendant suggests that his slapping Denyko and kicking Hogan were nothing more than resisting arrest, which defendant concedes he committed. In *Hill*, the defendant appealed his conviction of aggravated battery, arguing that the trial court erred when it refused defense counsel's request to instruct the jury on resisting a peace officer, a lesser included offense. *Id.* ¶ 1. Evidence presented at trial revealed that police received a call about a domestic disturbance. *Id.* ¶ 4. When they arrived at the specified address, they saw the defendant exit the house, cross the street, and enter another home. *Id.* The police followed the defendant and eventually found him in a small crawlspace. *Id.* ¶¶ 4-5. Shining flashlights on the defendant, they ordered him to exit the crawlspace. *Id.* ¶ 6. The defendant refused and then began kicking at the officers. *Id.* A police sergeant who arrived on the scene and witnessed what transpired testified that he "saw [the defendant's] legs 'kicking up and down' for 10 to 20 seconds." *Id.* ¶ 7. The sergeant stated that the defendant "would stop kicking and then start again when the officers approached him." *Id.* The defendant kicked the legs, hand, and chest area of the officers trying to detain him. *Id.* ¶ 6. The defendant denied intentionally hitting the officers with his feet. *Id.* ¶ 8.

¶ 25    On appeal, the reviewing court determined that it was error for the trial court to refuse to instruct the jury on resisting arrest. *Id.* ¶ 14. That is, the court concluded that "at least *some*

evidence in the record supports a possible conviction for resisting and acquittal for aggravated battery." (Emphasis added.) *Id.* ¶ 21. In addressing a possible acquittal for aggravated battery, the court observed:

> "[The defendant] made kicking motions for, at most and not continually, 20 seconds. He kicked while in a physical position that deprived him of a full range of motion. He kicked in the direction of officers in the dark with flashlights shining at him, depriving him of the ability to see where his kicks would land. A reasonable jury could conclude that [the defendant] did not act with the awareness that his kicks were 'practically certain' to make contact at all, let alone make contact of an insulting or provoking nature." *Id.* ¶ 25.

In so noting, the court was careful to stress that, for purposes of giving a lesser-included-offense instruction, " 'some evidence' does not mean 'some credible evidence.' " *Id.* ¶ 27 (quoting *People v McDonald*, 2016 IL 118882, ¶ 25); see also *Hill*, 2020 IL App (1st) 162119, ¶ 31 ("[A]t this stage [of deciding whether the jury should have been given a resisting a peace officer instruction], we do not determine whether *credible* evidence exists to support the lesser-included offense instruction." (Emphasis in original.)).

¶ 26    Putting aside that the issue raised in *Hill*—whether there was *some* evidence presented to justify giving a lesser included offense instruction—is different from that raised here, we find *Hill* distinguishable. Unlike here, the defendant in *Hill* did nothing other than sporadically kick at the officers in the dark while they shined flashlights on him and attempted to get him out of the crawlspace. Here, in contrast, defendant, who was in a well-lit area, knowingly made contact of an insulting or provoking nature when he dismissed Denyko by slapping his hand and, at a minimum, offended Hogan by kicking him in the chest multiple times while saying, "F*** you, bitch." Moreover, here, unlike in *Hill*, we are concerned with whether the evidence was credible.

The trial court, as the trier of fact, found both Denyko and Hogan credible. We find nothing that would require us to disturb that finding. See *People v. Coe*, 2021 IL App (4th) 200233, ¶ 106 (reviewing court "will not reassess the credibility of the witnesses").

¶ 27    Defendant also argues that "the trial evidence showed [defendant's] physical behavior to be self-protective." We find this argument unpersuasive. First, as the State notes, a person is prohibited from using force to prevent his arrest, even when he believes the arrest is unlawful. See *People v. Paez*, 45 Ill. App. 3d 349, 351 (1977). Likewise, as the State observes, the police are not required to retreat or desist when a person resists arrest. See *People v. Ammons*, 2021 IL App (3d) 150743, ¶ 9. Second, all of that aside, defendant's laughing, mocking, and defaming the officers, as heard on the squad-car video, reveals that defendant did not slap Denyko or kick Hogan to protect himself from them. Rather, the inference to draw is that defendant disregarded Denyko's and Hogan's official acts, belittling them as they tried to detain him.

¶ 28    Defendant's dismissive and demeaning behavior distinguishes this case from *People v. Boyd*, 2016 IL App (1st) 140599-U, on which defendant also relies.[3] In *Boyd*, a Best Buy loss-prevention officer (officer) believed that the defendant had stolen merchandise. *Id.* ¶ 5. He confronted the defendant in the store. *Id.* ¶ 5. The officer stood about one foot away from the defendant as he ordered the defendant to go to the security office and pointed to the defendant's waistband, where the officer believed the defendant had concealed the stolen items. *Id.* According

---

[3]Although unpublished decisions issued before January 1, 2021, are "not precedential except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case" (Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021)), we did rely on *Boyd* in *Ward*, 2021 IL App (2d) 190243, ¶ 66.

to the officer's testimony, as corroborated by Best Buy's surveillance video, the defendant, in response, used his left hand, which was holding a shopping basket, to slightly push the loss-prevention officer's hand away. *Id.* ¶¶ 7, 12 (the recording showed the defendant, while standing with his back to the surveillance camera, holding a shopping basket that "remained in [the defendant's] left hand and *** did not move noticeably"). After touching the officer's hand with his left hand, the defendant made a fist with his right hand, and the officer tackled the defendant. *Id.* ¶ 5. Based on this evidence, the defendant was convicted of battery based on knowingly making contact of an insulting or provoking nature. *Id.* ¶ 8. The defendant appealed. *Id.*

¶ 29    The appellate court reversed, noting:

> "In the context of the encounter, [the defendant's] use of his left hand should not have offended or insulted any ordinary and not unduly sensitive person. [The officer's] gesture brought his hand very close to [the defendant], and [the defendant's] response only showed the use of minimal force to protect his personal space. The video recorded a gross overreaction to inoffensive self-defensive contact in response to [the officer's] intrusive gesture." *Id.* ¶ 12.

¶ 30    Significant differences between this case and *Boyd* make *Boyd* unpersuasive here. First, this case, unlike *Boyd*, concerned an attempt to detain an individual believed to be armed. Thus, the ramifications for the police to confront defendant were more serious. Second, putting that fact aside, the slight touch of a hand with a shopping basket in *Boyd* was simply not the same as (1) dismissively slapping Denyko's hand after he asked defendant to stop or (2) repeatedly kicking Hogan in the chest while saying, "F*** you, bitch." Under the rubric in *Boyd*, defendant's contact here certainly qualifies as insulting or provoking. Third, not only was defendant's contact not "minimal," but we cannot construe his slapping Denyko and kicking Hogan as "inoffensive self-

defensive contact," given that the contact was made in response to repeated requests to comply with the officers' orders. *Id.*

¶ 31                                    III. CONCLUSION

¶ 32      For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 33      Affirmed.